UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 17-1652-MWF (JCx) | Date:  August 6, 2019 |
| Title: | United States of America v. Fariba Ely Cohen | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**  ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [48]

Before the Court is Defendant Fariba Ely Cohen's Motion for Partial Summary Judgment (the "Motion"), filed on June 24, 2019. (Docket No. 48). On June 28, 2019, the Government filed an Opposition. (Docket No. 49). Plaintiff filed a Reply on July 22, 2019. (Docket No. 53). The Court has read and considered the papers on the Motion and held a hearing on August 5, 2019.

For the reasons discussed below, the Motion is **DENIED**. Statutes trump regulations. The plain language of 31 U.S.C. § 5321(a)(5) states that the maximum civil penalty for a willful FBAR violation shall be the greater of $100,000 *or* 50 percent of the account's balance, superseding the language of 31 C.F.R. § 1010.820(g)(2), which states that the penalty shall be no greater than $100,000.

I. **BACKGROUND**

  A. **FBAR Penalty**

On an annual basis, residents and citizens of the United States are required to report to the Commissioner of the Internal Revenue certain activity with foreign financial agencies for each year in which the activity occurs. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a). One such activity is "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." § 1010.350(a). The form that needs to be completed for this annual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-1652-MWF (JCx)                              **Date:**  August 6, 2019
**Title:**       United States of America v. Fariba Ely Cohen

reporting is the Report of Foreign Bank and Financial Accounts ("FBAR"). For calendar years before 2017, the FBAR report for foreign financial accounts exceeding $10,000 maintained during a calendar year was due by June 30 of the following calendar year. § 1010.306(c).

Civil penalties can be assessed against an individual who, whether willfully or non-willfully, fails to comply with these reporting requirements. § 5321(a)(5)(A). For willful violations, the penalty assessed is the greater of $100,000 or 50% of the balance in the foreign financial account at the time of the violation. § 5321(a)(5)(C)(i). There is no reasonable cause exception for willful violations. § 5321(a)(5)(C)(ii). An FBAR penalty must be assessed within six years from the due date of the FBAR report. § 5321(b)(1). After an assessment, the Government may then bring a civil action to recover the FBAR penalty at any time before the end of the two-year period beginning on the date the penalty was assessed. § 5321(b)(2)(A).

As an example, for the 2008 calendar year, an individual needing to file an FBAR report must do so by June 30, 2009. If an individual fails to file the FBAR report by that date, the Internal Revenue Service ("IRS") may assess an FBAR penalty at any time within six years, or June 30, 2015. After the IRS's assessment, the Government then has two years from the date of that assessment to bring a civil action to collect any unpaid balance, including interest, costs, and expenses.

### B.    The Government's Complaint

The Court's Order on October 23, 2018, denying Defendant's motion for judgment on the pleadings, contained a detailed explanation of the relevant facts. (Docket No. 43). The Court will therefore limit its discussion here to those facts necessary for context.

The following facts are based on the evidence, as viewed in the light most favorable to the Government as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [her, or its] favor.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-1652-MWF (JCx)          **Date:** August 6, 2019
**Title:**     United States of America v. Fariba Ely Cohen

On March 1, 2017, the Government commenced this action. (*See generally* Complaint (Docket No. 1)). At all relevant times, Defendant was, and still is, a citizen of the United States. (*Id.* ¶¶ 11–12; Defendant's Statement of Undisputed Facts ("DSUF") No. 4 (Docket No. 48-3)).

Through this action, the Government seeks to collect an unpaid federal penalty assessment and interest and reduce those assessments to judgment. (DSUF No. 1). The IRS previously assessed an FBAR penalty under 31 U.S.C. § 5321(a)(5) against Defendant for the calendar year 2008 in the amount of $1,549,849 for failure to report a foreign bank account. (*Id.* No. 2). For the tax year 2008, which also coincides with the calendar year 2008, Defendant did not timely file an FBAR report. (*Id.* No. 3).

## II. DISCUSSION

In deciding a motion for summary judgment under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. Fed. R. Civ. P. 56 (a); *Anderson*, 477 U.S. 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Here, the parties don't really dispute that this issue is one of law.

### A. Relevant Statutory and Regulatory Framework

The following relevant statutory and regulatory framework was discussed in detail in *United States v. Schoenfeld*, No. 16-CV-1248-J-34PDB, 2019 WL 2603341 (June 25, 2019 M.D. Fla.):

> In 1970, Congress enacted the Currency and Foreign Transactions Reporting Act, commonly referred to as the Bank Secrecy Act (BSA). The primary purpose of the BSA was to require the making of certain reports that "have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." To effectuate this purpose, in the BSA Congress directed the Secretary of the Department of Treasury to promulgate regulations requiring the reporting of information from United States persons who have relationships or conduct transactions with foreign financial agencies. The Secretary promulgated implementing regulations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  CV 17-1652-MWF (JCx) | **Date:**  August 6, 2019 |
| **Title:**    United States of America v. Fariba Ely Cohen | |

in 1972.  As relevant here, the Secretary's implementing regulations require "each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to file an FBAR.  Such persons must file the FBAR by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."

In 2002, the Secretary delegated the authority to administer and enforce the BSA to the Director of the Financial Crimes Enforcement Network (FinCEN), a bureau of the Department of Treasury.  In 2003, FinCEN delegated its "authority to assess and collect civil penalties for noncompliance with FBAR requirements" to the IRS.

As originally enacted, the BSA did not contain a civil penalty provision for failing to comply with the FBAR requirements, but Congress added one in 1986.  From 1986 to 2004, the maximum civil penalty for a willful violation of the FBAR requirements was limited to "the greater of (I) an amount (not to exceed $100,000) equal to the balance in the account at the time of the violation; or (II) $25,000."  After Congress added the civil penalty for FBAR violations, the Secretary promulgated amended implementing regulations.  Among other things, the regulations were updated to reflect civil penalties for violations after October 1986 "to keep the regulations as current as possible."

Specifically, the regulation states in relevant part: (g) For any willful violation committed after October 27, 1986, of any requirement of § 1010.350, § 1010.360 or § 1010.420, the Secretary may assess upon any person, a civil penalty: . . . (2) In the case of a violation of § 1010.350 or § 1010.420 involving a failure to report the existence of an account or any identifying information required to be provided with respect to such account, a civil penalty not to exceed the greater of the amount (***not to***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 17-1652-MWF (JCx) | Date:  August 6, 2019 |
| Title: United States of America v. Fariba Ely Cohen | |

*exceed $100,000*) equal to the balance in the account at the time of the violation, or $25,000.

In 2004, Congress increased the maximum civil penalty for willful FBAR violations to the greater of $100,000 or 50 percent of the account balance at the time of the violation. Specifically, § 5321(a) provides in relevant part:

(5) Foreign financial agency transaction violation.—

(A) Penalty authorized.—The Secretary of the Treasury *may impose* a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314.

(B) Amount of penalty.—

(i) In general.—Except as provided in subparagraph (C), the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.

. . .

(C) Willful violations.—In the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314—

(i) the maximum penalty under subparagraph (B)(i) *shall be increased* to the greater of—

(I) $100,000, or

(II) 50 percent of the amount determined under subparagraph (D)[.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  CV 17-1652-MWF (JCx) | **Date:**  August 6, 2019 |
| **Title:**     United States of America v. Fariba Ely Cohen | |

> (D) Amount.—The amount determined under this subparagraph is—
>
>> (ii) in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation.
>
> Significantly, the Secretary did not amend 31 C.F.R. § 1010.820(g)(2) to reflect the increased maximum civil penalty for willful FBAR violations. Thus, the statute states that the maximum civil penalty for a willful FBAR violation shall be the greater of $100,000 or 50 percent of the account's balance, while the regulation states that the penalty shall be no greater than $100,000.

*Id.* at *1–3 (citations omitted and emphasis added).  The Court agrees with this discussion of the statutory and regulatory framework.

### B.     FBAR Penalty Not Limited to $100,000

Through her Motion, Defendant argues that the main issues are "(1) whether the [IRS] has the authority to assess an FBAR penalty in excess of $100,000, and (2) whether 31 C.F.R. § 1010.820(g)(2) is consistent with the 2004 amendment to 31 U.S.C. § 5321(a)(5)."  (Mot. at 5).  The two issues are intertwined—whether the IRS is bound by the $100,000 limit for willful FBAR violations set forth in § 1010.820(g)(2)—so the Court will address them together.

According to Defendant, while § 5321(a)(5) permits the Secretary to assess larger FBAR penalties, the Secretary is not required to do so.  (*Id.* at 6–15).  More specifically, because § 5321(a)(5)(A) states that the Secretary "may impose" a civil penalty for a willful FBAR violation, the entire statute "gives the Secretary the permissive authority to impose a penalty."  (*Id.* at 10).  By increasing the maximum civil penalty for a willful FBAR violation to 50% of the balance of an account, Congress merely established a higher "penalty ceiling" that the Secretary "shall not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-1652-MWF (JCx)**                                **Date:  August 6, 2019**
**Title:**     United States of America v. Fariba Ely Cohen

exceed." (*Id.* at 11–14).  If "the Secretary desired to impose an FBAR penalty greater than $100,000, [the Secretary] could amend [§ 1010.820(g)(2)] to change the $100,000 cap." (*Id.* at 15).  Defendant maintains that because the Secretary has not made this amendment, § 1010.820(g)(2) "remains in effect to cap willful FBAR penalties at $100,000." (*Id.*).  Defendant's arguments are virtually identical to those raised by the defendant in *Schoenfeld*.  *See* 2019 WL 2603341, at *3.

In opposition, the Government argues that Congress deliberately provided for maximum FBAR penalties that exceed $100,000 and that the amendment in 2004 (*i.e.*, § 5321(a)(5)) supersedes § 1010.820(g)(2).  (Opp. at 3–6).  The Government also contends that the Secretary does not have discretion to set a lower maximum penalty because of the mandatory "shall be increased to the greater of" in § 5321(a)(5)(C)(i). (*Id.* at 7–8).  Nor has the Secretary ever interpreted the current statute as incorporating a $100,000 maximum penalty from § 1010.820(g)(2).  (*Id.*).

At the hearing, both parties presented similar arguments.  Defendant asserted that § 1010.820(g)(2) remains valid because it is consistent with the new statutory framework; a maximum penalty of $100,000 is a merely subset of the maximum penalty permitted under the amended § 5321(a)(5).  In response, the Government pointed out that Defendant's argument cannot be reconciled with the chronology of events.  When § 1010.820(g)(2) was issued, the maximum civil penalty for FBAR violation had been limited to $100,000.  In 2004, however, Congress revised § 5321(a)(5) to increase the maximum civil penalty for willful FBAR violations to the greater of $100,000 or 50% of the account balance.  In light of this revision, the Government argued that the statute can only be understood as both an increase in the maximum potential penalty and a superseding of § 1010.820(g)(2).  The Court agrees with the Government.

The Court first notes that no court of appeals has addressed the exact question of whether the civil penalty for a willful FBAR violation is limited to $100,000, and, as far as the Court can tell, only eight district courts have answered this specific question. *See, e.g.*, *Schoenfeld*, 2019 WL 2603341; *United States v. Park*, No. 16-CV-10787, 2019 WL 2248544 (N.D. Ill. May 24, 2019); *United States v. Garrity*, No. 15-CV-243-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-1652-MWF (JCx)          **Date:** August 6, 2019
**Title:**     United States of America v. Fariba Ely Cohen

MPS, 2019 WL 1004584 (D. Conn. Feb. 28, 2019); *United States v. Horowitz*, 361 F. Supp. 3d 511 (D. Md. 2019); *Kimble v. United States*, 141 Fed. Cl. 373 (2018); *Norman v. United States*, 138 Fed. Cl. 189 (2018); *United States v. Wahdan*, 325 F. Supp. 3d 1136 (D. Colo. 2018); *United States v. Colliot*, No. 16-CV-1281-AU-SS, 2018 WL 2271381 (W.D. Tex. May 16, 2018).

     The first two district courts to address the question concluded that the civil penalty for a willful FBAR violation is limited to $100,000 as set forth in § 1010.820(g)(2). *Colliot*, 2018 WL 2271381, at *2; *Wadham*, 325 F. Supp. 3d at 1139.

     However, every single district court since *Wadham* and *Colliot* (and a majority of the district courts to have considered the issue) have concluded that the statute and the regulation conflict with each other, the statute controls, and the IRS is ***not bound*** by the $100,000 limit in the regulation. *See Schoenfeld*, 2019 WL 2603341, at *4; *Park*, 2019 WL 2248544, at *7–10; *Garrity*, 2019 WL 1004584, at *1–5; *Horowitz*, 361 F. Supp. 3d at 513–16; *Kimble*, 141 Fed. Cl. at 386–89; *Norman*, 138 Fed. Cl. at 196.

     Having reviewed these eight district court opinions, the Court views as more convincing the reasoning and analysis in the post-*Wadham* and *Colliot* line of cases. That is, the Court agrees with those cases holding that § 5321(a)(5) and § 1010.820(g)(2) are inconsistent with each other and the statute supersedes the regulation.

     Congress specifically raised the maximum penalty for willful FBAR violations to the greater of $100,000 or 50% of the balance of an account, and, contrary to the arguments raised by Defendant, no regulation promulgated by the Secretary can lower this maximum penalty. *See, e.g.*, *Park*, 2019 WL 2248544, at *9 ("Administrative regulations exist to implement statutes, not alter them."). As the district court in *Park* aptly concluded, the penalty provision of § 1010.820 does not state the maximum applicable penalty under § 5321(a)(5), but rather the maximum penalty is in the text of the statute. *Id.* Once "a violation has occurred, the ***statute's*** maximum penalty provision applies." *Id.* (emphasis added); *see Schoenfeld*, 2019 WL 2603341, at *4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 17-1652-MWF (JCx) | **Date:** August 6, 2019 |
| **Title:** United States of America v. Fariba Ely Cohen | |

("Indeed, the ***plain language of the statute*** states what the maximum penalty shall be.") (citation omitted and emphasis added). It is one thing for the Secretary not to impose the maximum penalty in a particular case. It is quite another for the Secretary categorically to limit what the maximum penalty is, in defiance of the statutory words themselves.

More broadly speaking, the Ninth Circuit has also explained that "when a regulation conflicts with a subsequently enacted statute, ***the statute controls*** and voids the regulation." *Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir. 2002) (emphasis added). In *Farrell*, the Ninth Circuit held that "income earned by a taxpayer on Johnston Island, a U.S. insular possession, is not excludable from gross income as 'foreign earned income' under § 911 of the Internal Revenue Code," even though a related regulation would have allowed such income to be excludable). *Id.*

Accordingly, the Motion is **DENIED**.

IT IS SO ORDERED.