NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
GAVIN L. GREENE (Cal. Bar No. 230807)
Assistant United States Attorney
      Federal Building, Suite 7211
      300 North Los Angeles Street
      Los Angeles, California 90012
      Telephone: (213) 894-4600
      Facsimile: (213) 894-0115
      E-mail: Gavin.Greene@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>        v.<br><br>Fariba Ely Cohen,<br><br>    Defendant. | Case No. CV 17-1652 MWF (JCx)<br><br>Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities; Declarations<br><br>Date:        December 16, 2019<br>Time:       10:00 a.m.<br>Courtroom:  5A<br>Location:    First Street Courthouse<br>            350 West First Street<br>            Los Angeles, California |

      PLEASE TAKE NOTICE that at the above captioned date and time, the United States of America will and hereby does make the following motion.  Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the United States moves this Court for summary judgment to determine that defendant Fariba Cohen willfully failed to file the Report of Foreign Bank and Financial Accounts (FBAR) for tax year 2008 when it was due on June 30, 2009 in violation of 31 U.S.C. § 5314(a), and that she is liable to the United States for $1,719,865.32 as of September 27, 2016, which is

comprised of the FBAR penalty, interest, and penalties for late payment under 31 U.S.C. § 3717(e)(2) for tax year 2008.

As grounds for this motion, the United States submits that there is no genuine issue as to any material fact, and the United States is entitled to summary adjudication in its favor as a matter of law.

This motion is based upon this Notice of Motion, accompanying Memorandum of Points and Authorities and declarations filed concurrently, the pleadings and papers on file herein, and such other oral and documentary evidence as may be presented at the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 13, 2017.

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: November 15, 2019

/s/
GAVIN GREENE
Assistant United States Attorney
Attorneys for the United States of America

2

# Contents

I. Introduction .................................................................................. 1

II. Statement of Facts......................................................................... 2

    A. Fariba Cohen had foreign bank accounts that she disclosed in the 1990s................................................................................. 2

    B. Fariba and Saeed Cohen formed the entity Fariba Lauren ............. 2

    C. Fariba Cohen's attorney helped form foreign entities and told her about the FBAR filing requirements ........................................ 3

    D. Fariba Cohen had signature authority for the Leumi Bank account ......................................................................................... 4

    E. Fariba Cohen had signature authority for other foreign bank accounts ..................................................................................... 6

        1.    Union Bancaire Privee...................................................... 6

        2.    Israel Discount Bank ....................................................... 6

        3.    RBS Coutts AG ................................................................. 7

    F. Fariba Cohen counted money in her home from Swiss banker Kourosh Aynehchi.......................................................................... 7

    G. Fariba Cohen filed joint tax returns that failed to disclose her foreign bank accounts but put her on further notice of her FBAR filing requirements ................................................................ 7

    H. Fariba Cohen failed to report to the IRS income held in foreign bank accounts .......................................................................... 11

    I. Fariba Cohen failed to timely file an FBAR for tax year 2008........ 11

    J. After Fariba Cohen filed for divorce, Saeed Cohen filed amended tax returns and reported the previously unreported income held in foreign accounts ...................................................... 11

    K. The IRS assessed the FBAR penalty against Fariba Cohen........... 12

III. Statement of Issues..................................................................... 12

IV. Law and Analysis ....................................................................... 13

    A. Standard for Summary Judgment and Burden of Proof ................. 13

    B. FBAR filing requirement.......................................................... 14

    C. Willfulness ............................................................................ 15

        1.    Recklessness................................................................... 15

i

2.    Willful Blindness................................................. 17

3.    It is appropriate for the Court to decide willfulness on summary judgment ............................................. 18

D. The evidence shows that Fariba Cohen's failure to file an FBAR was reckless and constituted willful blindness.................... 19

1.    Fariba Cohen's failure to timely file an FBAR for 2008 was the result of recklessness............................... 22

2.    Fariba Cohen's failure to timely file an FBAR for 2008 was also the result of willful blindness ............................. 24

V. Conclusion........................................................... 25

## **CASES**

*Am. Arms Int'l v. Herbert*, 563 F.3d 78 (4th Cir. 2009) ................................. 16

*Bedrosian v. United States*, 912 F.3d 144 (3d Cir. 2018) ........................ 16, 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................... 13

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............................................................ 16

*Greer v. Commissioner*, 595 F.3d 338 (6th Cir. 2010), ................................. 17

*Kimble v. United States*, 141 Fed. Cl. 373 (2018) ........................................... 16

*Lefcourt v. United States*, 125 F.3d 79 (2d Cir. 1997) .................................... 17

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95 (9th Cir. 1983) ................................................................................................................... 13

*Norman v. United States*, No. 2018-2408, 2019 WL 5849508 (Fed. Cir. Nov. 8, 2019)................................................................................................. 16, 22

*Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794 (9th Cir. 2010) ....... 13

*Plett v. United States*, 185 F.3d 216 (4th Cir. 1999)...................................... 19

*Prino v. Simon*, 606 F.2d 449 (4th Cir. 1979).................................................. 16

*Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005)........................ 13

*Ruggieri v. United States*, 145 F.3d 1340 (9th Cir. 1998) ............................ 18

*Ryther v. United States*, 540 F. App'x 803 (9th Cir. 2013) .......................... 18

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ...................................... 15

*Skouras v. United States*, 26 F.3d 13 (2d Cir. 1994) .................................... 19

*Teel v. United States*, 529 F.2d 903 (9th Cir. 1976)...................................... 18

*United States v. Bohanec*, 263 F. Supp. 3d 881 (C.D. Cal. 2016) ................. 15

*United States v. Doherty*, 233 F.3d 1275 (11th Cir. 2000)............................ 17

*United States v. Garrity*, 304 F. Supp. 3d 267 (D. Conn. 2018) ................... 15

*United States v. Horowitz*, 361 F. Supp. 3d 511 (D. Md. 2019).................... 18

*United States v. Ill. Cent. R. Co.*, 303 U.S. 239 (1938) ................................. 15

*United States v. Kelley-Hunter*, 281 F. Supp. 3d 121 (D.D.C. 2017) ............ 18

*United States v. McBride*, 908 F. Supp. 2d 1186 (D. Utah 2012)................. 16

*United States v. Rum*, No. 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019) ....... 16

*United States v. Williams*, 489 F. App'x. 655 (4th Cir. 2012) ................. 16, 22

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ............ 13

**STATUTES**

31 U.S.C. § 5314(a) ........................................................................................ 17

31 U.S.C. § 5321(a)(5)(A) .............................................................................. 17

31 U.S.C. § 5321(a)(5)(C) .............................................................................. 19

31 U.S.C. § 5321(a)(5)(C)(i) .......................................................................... 17

31 U.S.C. § 5321(a)(5)(C)(ii) ......................................................................... 18

31 U.S.C. § 5321(a)(5)(D) .............................................................................. 19

31 U.S.C. § 5321(b)(1) ................................................................................... 18

31 U.S.C. § 5321(b)(2)(A) .............................................................................. 18

**RULES**

Fed. R. Civ. P. 56(a) ...................................................................................... 16

Fed. R. Civ. P. 56(e) ...................................................................................... 16

**REGULATIONS**

31 C.F.R. § 1010.306(c) ................................................................................. 17

31 C.F.R. § 1010.350(a) ................................................................................. 17

# Memorandum of Points and Authorities

## I. Introduction

Fariba Cohen willfully failed to report to the United States Treasury her financial interest in a foreign bank account for tax year 2008.  Fariba Cohen knew that she had a foreign bank account with Leumi Bank (Luxembourg).  The bank account was held in the name of a foreign corporation, L&C Lighting Technology Ltd. (L&C Lighting), a corporation for which she owned half the stock, was an officer and director, and signed corporate documents.  She went to Leumi Bank to sign the documents to form the account in 2005, she had signature authority, and she knew that the account had a balance of at least $1,300,000 when it was formed.  On June 30, 2009, when the Report of Foreign Bank and Financial Accounts (FBAR) was due to be filed for the year 2008, the balance in the Leumi Bank account was over $6,000,000.  In addition to Leumi Bank, she had other foreign bank accounts with substantial balances that were also not reported.

Fariba Cohen knew about the FBAR filing requirements because her attorney told her about the requirements when L&C Lighting was formed.  In addition, she was also put on notice because she signed multiple tax returns under penalties of perjury declaring that she had examined the accompanying schedules, including Schedule B as early as tax year 2003, which referred to the FBAR form.  The instructions for Schedule B made clear the FBAR was due by June 30 of the following year.  She had previously reported her interest in foreign bank accounts on her tax returns, but from 2003 through 2008 did not do so, and during those years she underreported her income by millions of dollars.  Fariba Cohen willfully failed to file her FBAR for tax year 2008 and the United States is entitled to judgment as a matter of law.

## II. Statement of Facts

**A. Fariba Cohen had foreign bank accounts that she disclosed in the 1990s**

Amp Plus, Inc. dba Elco Lighting was formed in 1991.  Statement of Undisputed Facts (SUF) 1.  When Elco Lighting was formed, Rouhollah Esmailzadeh (Esmailzedeh) owned 50% of its stock, and the other 50% was held in the name of Saeed Cohen, her then spouse.  SUFs 2, 179, 211.  In or around 1996, Saeed Cohen and Esmailzadeh created an offshore company in Hong Kong, named Seohyun International Ltd. (Seohyun).  SUF 3.  The purpose of Seohyun was to have foreign bank accounts in its name to hold Elco Lighting funds.  SUFs 4-5.  In or around the late 1990s, Fariba and Saeed Cohen (collectively the Cohens) also held money jointly in overseas bank accounts in their individual names.  SUF 6.  In 1998, Saeed Cohen purchased Esmailzadeh's 50% interest in Elco Lighting.  SUF 7.  Saeed and Fariba Cohen then filed amended income tax returns for tax years 1995, 1996, and 1997 to report income from Elco Lighting that previously had not been reported.  SUF 8.  The amended tax returns for tax years 1996 and 1997 included Schedule B, which indicated that they had an interest in foreign accounts.  SUFs 9-14.

**B. Fariba and Saeed Cohen formed the entity Fariba Lauren**

In or about 2001, the Cohens formed the entity Fariba Lauren.  SUF 15.  On July 9, 2002, a domestic business bank account was opened at Wells Fargo Bank in the name of Fariba Lauren with an account number ending in 7868.  SUFs 16-17.  Fariba Cohen was the sole signatory on the Fariba Lauren bank account at Wells Fargo Bank.  SUFs 17-18.

Between July and August of 2002, the Cohens funded the Fariba Lauren account with several cashier's checks from Seohyun's account at the International Commercial Bank of China.  SUFs 19-21.  On November 26,

2

2002, a check for $800,000 was drawn on the Fariba Lauren account to pay down the mortgage on their personal residence in Beverly Hills, California. SUFs 22-24.

**C. Fariba Cohen's attorney helped form foreign entities and told her about the FBAR filing requirements**

In approximately 2002, Fariba Cohen suggested to Saeed Cohen that they retain attorney Fred Mashian.  SUF 25.  Initially, Fred Mashian assisted Fariba and Saeed Cohen with estate planning.  SUF 26.

On November 12, 2004, the Cohens attended a meeting at Fred Mashian's office.  SUFs 27-28.  Fred Mashian assisted in the formation of two entities: (a) L&C Lighting Technology Ltd., a Samoan company, and (b) Liform Lite Industrial Co. Ltd., a British Virgin Islands company.  SUFs 29-31.  Fred Mashian explained the documents related to L&C Lighting Technology Ltd. and Liform Lite Industrial Co. Ltd. to Fariba Cohen.  SUFs 32-33.  At the meeting, Fariba Cohen read and signed various documents related to L&C Lighting Technology Ltd. and Liform Lite Industrial Co. Ltd.  SUFs 34-35.

The documents creating L&C Lighting Technology Ltd. and Liform Lite Industrial Co. Ltd., placed one-half of the stock in the name of Fariba Cohen, and one-half of the stock in the name of Saeed Cohen, established the Cohens as directors, and authorized the opening of foreign accounts in the names of the entities.  SUF 36.  Fariba Cohen consented to act as a Director of L&C Lighting Technology Ltd.  SUFs 37-38.  Fariba Cohen was appointed, and agreed to act as Secretary of L&C Lighting Technology Ltd.  SUFs 39-42.  Fariba Cohen also signed other documents to establish foreign bank accounts in Israel, Switzerland, and Luxembourg.  SUF 43.

As Fred Mashian was explaining the corporate documents and the bank account applications, he went through and explained the FBAR filing

requirements to the Cohens.  SUFs 44-45.  Specifically, on April 9, 2012, Fred Mashian testified in the case of *In re the Marriage of: Fariba Cohen and Saeed Cohen*, that:

> [A]s I was explaining the documents and the banks and the bank account – the corporate documents and the account applications, I went though and explained to them FBAR filing, various other information filing, which was part of what I told them that is required to be here. But neither of them ever told me anything about it being reported or not being reported.  SUF 46.

## D. Fariba Cohen had signature authority for the Leumi Bank account

On multiple occasions, the Cohens met with representatives of foreign banks in which they held foreign bank accounts, were presented with bank account opening documents or other account-related documents, and were shown or given bank statements which showed the balances in their foreign bank accounts.  SUFs 47-49.

On January 5, 2005, the Board of Directors of L&C Lighting Technology Ltd. met and resolved to open a bank account with Leumi Bank on behalf of the company, grant power of attorney to Fariba and Saeed Cohen to sign the necessary application documents, and designate and appoint Fariba and Saeed Cohen to operate the account under their individual signatures.  SUF 50.  The corporate minutes summarizing the resolution were signed by Fariba Cohen on March 2, 2005.  SUFs 51-52.

Fariba and Saeed Cohen met with Farideh Zakaryaie of Leumi Bank in Beverly Hills to sign documents.  SUF 53.  Fariba Cohen signed documents to open an account with Leumi Bank with an account number ending in

4

6002.  SUF 54.  Leumi Bank guaranteed Fariba Cohen's signature.  SUFs 55-56.  A signature guarantee is a form of authentication, issued by a bank or other financial institution, which verifies the legitimacy of a signature and the signatory's overall request.  SUF 212.

Fariba Cohen signed page 1 of the Leumi Bank account application. SUFs 57-59.  Fariba Cohen had individual signature authority over this account when it was created.  SUF 60-61.  She continued to have signature authority over the account during 2008.  SUF 62.

On page 2 of the Leumi Bank account application, Fariba Cohen signed the "Hold Mail" instruction requesting that Leumi Bank retain all correspondence addressed to L&C Lighting Technology, Ltd. with regard to the account.  SUFs 59, 63-64.  Fariba Cohen wrote "Good for pledge of all assets held with the Bank in our favour" [sic] on page 2 and signed underneath.  SUFs 65-66.

On page 3, Fariba Cohen wrote "Read and approved" and then signed under the text:

The Corporation hereby acknowledges having received a copy of the terms and Conditions of the Bank, and confirms its agreement to the Terms and Conditions ruling the Corporation's business relationship with Bank Leumi (Luxembourg) S.A. The Corporation formally represents that all declarations made herein are accurate and true.

Please precede your full signature with the words "Read and Approved" written in your own handwriting.
SUF 67.

1   On page 3, Fariba Cohen signed under the hand written statement "No
2   verbal communication, email or fax is acceptable" and "I will always
3   communicate in writing." SUF 68.

4   On or about the time the Leumi Bank account number was opened,
5   Fariba Cohen saw a bank statement from Leumi Bank that had an account
6   balance of between $1,300,000 and $1,500,000.  SUFs 69-71.

**E. Fariba Cohen had signature authority for other foreign bank accounts**

**1.   Union Bancaire Privee**

On December 3, 2004, the Cohens both signed a corporate resolution to
open an account at Union Bancaire Privee.  SUFs 72-73.  Fred Mashian
helped establish the foreign account at Union Bancaire Privee.  SUFs 74-76.
Fariba Cohen signed the document to open a bank account at Union
Bancaire Privee in Geneva.  SUF 77.  During the year 2008, Fariba Cohen
had signature authority for the foreign bank account with Union Bancaire
Privee with an account number ending in 4169, owned by Liform Lite
Industrial Co., Ltd.  SUFs 78-79.  Fariba Cohen was a Director for Liform
Lite Industrial Co., Ltd., and during 2008, the Union Bancaire Privee
account had a maximum value of $2,336,899.  SUFs 80-81.

**2.   Israel Discount Bank**

Fariba Cohen signed bank documents to open a foreign bank account
with Israel Discount Bank with an account number ending in 0262.  SUFs
82-85.  The account at Israel Discount Bank was assigned a code name
"Jouno."  SUFs 86, 211.  During the year 2008, Fariba Cohen still had a
foreign bank account with Israel Discount Bank.  SUF 87.  During the year
2008, the Israel Discount Bank account had a maximum value of $1,093,373.
SUF 88.

6

### 3. RBS Coutts AG

Fariba Cohen signed bank documents to open a foreign bank account with RBS Coutts AG with an account number ending in 2300. SUFs 85, 89-90. The RBS Coutts AG account was owned by L&C Lighting Technology, Ltd. SUF 92. During the year 2008, Fariba Cohen had signature authority for the RBS Coutts AG account. SUF 92. During the year 2008, the RBS Coutts AG account had a maximum value of $2,839,899. SUF 93.

**F. Fariba Cohen counted money in her home from Swiss banker Kourosh Aynehchi**

On October 3, 2007, Swiss banker Kourosh Aynehchi (Aynehchi) brought $100,000 in cash to the Cohen's residence. SUFs 94-95. Fariba Cohen received and counted $100,000 in cash from Aynehchi and signed a handwritten receipt for the cash authorizing the transfer of an equivalent dollar amount out of a Swiss bank account held by L&C Lighting Technology, Ltd. at EFG Bank to an unrelated party's account. SUFs 96, 202-203.

**G. Fariba Cohen filed joint tax returns that failed to disclose her foreign bank accounts but put her on further notice of her FBAR filing requirements**

For tax years 2003 through 2008, Fariba Cohen and Saeed Cohen filed joint federal income tax returns. SUF 97. Their tax returns were prepared by Hamid Fani, CPA. SUF 98. Saeed Cohen obtained the completed income tax returns from Hamid Fani. SUF 99. Once the tax returns were signed, Saeed Cohen would then fax the signature page to the accountant. SUF 100. Fariba Cohen had access to Hamid Fani and knew how to contact him. SUFs 101-102. Hamid Fani was in direct contact with Fariba Cohen on multiple occasions. SUF 103. If Fariba Cohen had requested a copy of her

tax return from Hamid Fani at any time, he would have given it to her.  SUF 104.

For tax years 2003 through 2008, Fariba Cohen's joint Individual Income Tax Returns (Form 1040) included Schedule B – Interest and Ordinary Dividends.  SUFs 105-111.  For tax years 2003 through 2008, Fariba Cohen reported interest income on Schedule B from domestic banks, such as Washington Mutual, Pacific Crest Bank, and Wells Fargo.  SUFs 204-209.  For tax years 2003 through 2006, Schedule B on Fariba Cohen's joint Individual Income Tax Returns included ordinary dividends from State Farm.  SUFs 107-110, 112.  For tax years 2003 through 2008, in response to the question on Line 7a, "At any time during [the tax year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank, securities account, or other financial account?  See B-2 for exceptions and filing requirements for Form TD F 90-22.1" the "No" box was checked.  SUFs 105-110, 113.

For tax year 2008, page B-2 of the Instructions for Schedules A & B (Form 1040) contained the following text:

Line 7a
Check the "Yes" box on line 7a if … [a]t any time during 2007 you had an interest in or signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account).
…
See Form TD F 90-22.1 to find out if you are considered to have an interest in or signature over a financial account in a foreign country (such as a bank account, securities account, or other financial account).

You can get Form TD F 90-22.1 by visiting the IRS website at www.irs.gov/pub/irs-pdf/f90211.pdf.

If you checked the "Yes" box on line 7a, file Form TD F 90-22.1 by June 30, 2009, with the Department of the Treasury at the address shown on that form.

SUF 114.  The instructions for tax years 2003 through 2007 had substantially similar instructions informing taxpayers that if they checked the "Yes" box on Line 7a, they must file Form TD F 90-22.1 by June 30 of the next year with the Department of the Treasury at the address shown on that form.  SUFs 115-121.

Fariba Cohen holds an associate's degree in biology, and attended USC for over three years studying biomedical engineering.  SUFs 112, 122.  Since 1987, Fariba Cohen has been self-employed, selling insurance policies as a licensed insurance agent affiliated with State Farm Insurance.  SUF 123.  Fariba Cohen sold homeowners insurance, commercial insurance, and life insurance.  SUFs 124-126.

For tax years 2003 to 2008, Fariba Cohen was in contact with Hamid Fani or his office to provide information regarding her income and expenses related to selling State Farm insurance.  SUFs 70, 127-128.  During that time, she had one employee. SUF 129.  For tax years 2003 through 2008, Fariba Cohen's joint U.S. Individual Income Tax Returns (Form 1040) included Schedule C – Profit or Loss from Business for Fariba Cohen's work as an insurance agent for State Farm Insurance.  SUFs 105-110, 130.  For tax years 2003 through 2008, the gross receipts for Fariba Cohen's insurance business were between $91,020 and $132,624.  SUFs 105-110, 131-136.

The jurat on the tax returns for tax years 2003 through 2008 contains the following statement: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." SUF 137.  Fariba Cohen signed all tax returns that Saeed Cohen asked her to sign.  SUF 139.  She never refused to sign any document that Saeed Cohen gave her during their marriage.  SUF 140

For tax years 2003 and 2004, Fariba Cohen signed the joint income tax returns with Saeed Cohen.  SUF 141.  The Cohen's joint tax return for tax year 2004 was filed with the IRS in September of 2005.  SUFs 109-110, 142.

For tax year 2005, Fariba Cohen contacted Hamid Fani's staff to provide information regarding her income and expenses on October 11, 2006. SUFs 127, 143-144.  If Saeed Cohen asked her to sign the 2005 tax return, she would have done so.  SUF 145.  The joint tax return for Saeed and Fariba Cohen for tax year 2005 was mailed to the IRS on October 16, 2006.  SUF 146.

For tax year 2006, if Saeed Cohen asked Fariba Cohen to sign the 2006 tax return, she would have done so.  SUF 147.  The joint tax return for Saeed and Fariba Cohen for tax year 2006 was filed with the IRS on October 9, 2007.  SUF 148.

For tax year 2007, Fariba Cohen contacted Hamid Fani's staff to provide information on October 7, 2008.  SUFs 149-150.  The joint tax return for Saeed and Fariba Cohen for tax year 2007 was filed with the IRS on October 13, 2008.  SUF 151.

For tax year 2008, Fariba Cohen signed the joint tax return with Saeed Cohen.  SUF 152.

**H. Fariba Cohen failed to report to the IRS income held in foreign bank accounts**

For tax years 2003 through 2008, Fariba Cohen's joint income tax returns omitted foreign-earned income, and understated her tax liabilities. SUFs 153-155. The understatement of income arose because Amp Plus failed to report all of its income, and Amp Plus was a Subchapter-S corporation, so its reported net income flowed through to Fariba and Saeed Cohen, and they did not report that portion of the Amp Plus income on their joint individual income tax returns. SUFs 156-158. For tax years 2003 through 2008, Saeed and Fariba Cohen underreported on average $6,379,427 per year or 71% of their income. SUF 159-160. This unreported income was deposited into foreign accounts. SUF 161.

**I. Fariba Cohen failed to timely file an FBAR for tax year 2008**

For tax year 2008, Fariba Cohen was a United States citizen, had signature authority over multiple foreign bank accounts, including a bank account at Leumi Bank (Luxumbourg) with an aggregate balance that exceeded $14,000,000. SUFs 162-171. Although she was required to file an FBAR with the IRS to report her interest in the foreign accounts, she failed to do so by June 30, 2009. SUFs 172-173. As of June 30, 2009, the Leumi Bank account with an account number ending in 6002 had a balance of $6,199,395. SUF 174.

**J. After Fariba Cohen filed for divorce, Saeed Cohen filed amended tax returns and reported the previously unreported income held in foreign accounts**

On October 27, 2008, Fariba Cohen filed a petition for dissolution of marriage. SUF 175. In February of 2009, Fariba Cohen met with Fred Mashian and Hamid Fani to obtain information about the scope and extent of her marital asset holdings with Saeed Cohen. SUF 176. In March of

2009, Fariba Cohen's attorney served discovery on Saeed Cohen's attorney. SUF 177.  On March 27, 2009, the divorce was put on hold in an attempt to reconcile the marriage.  SUF 178.  They later separated on February 26, 2010.  SUF 179.

On June 1, 2011, Saeed Cohen filed amended income tax returns for tax years 2003 through 2008, and based on the amended returns he paid the IRS over $18,000,000 in tax.  SUFs 180-181.

On September 10, 2011, Fariba Cohen filed delinquent FBARs for tax years 2006 through 2008 that disclosed that she owned or had signature authority for various foreign bank accounts, including an account with Leumi Bank (Luxembourg).  SUFs 182-186.

**K. The IRS assessed the FBAR penalty against Fariba Cohen**

On March 5, 2015, the IRS assessed an FBAR penalty in the amount of $1,549,849 against Fariba Cohen for her willful failure to report her interest in a foreign financial account as required by 31 U.S.C. § 5314 for tax year 2008.  SUF 187.  On March 5, 2015, notice and demand for payment was sent to Fariba Cohen for tax year 2008.  SUFs 188-189.

Fariba Cohen has not paid the FBAR and late payment penalties assessed against her for calendar year 2008.  SUF 190.  As of September 27, 2016, Fariba Cohen was liable to the United States for $1,719,865.32, which is comprised of the FBAR penalty, interest, and penalties for late payment under 31 U.S.C. § 3717(e)(2) for tax year 2008.  SUFs 166-167.

### III. Statement of Issues

Whether Fariba Cohen willfully failed to timely file an FBAR with the IRS for tax year 2008 when it was due on June 30, 2009.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IV. Law and Analysis

## A. Standard for Summary Judgment and Burden of Proof

Summary judgment shall be granted when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  In other words, summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[2]

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements.[3]  Nor may the non-moving party merely attack or discredit the moving party's evidence.[4]  The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial.[5]  Uncorroborated and self-serving testimony does not create a genuine issue of material fact and preclude summary judgment.[6]  Indeed, a "mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party."[7]

---

[1] Fed. R. Civ. P. 56(a).

[2] *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798–99 (9th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[3] Fed. R. Civ. P. 56(e) .

[4] *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

[7] *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

**B. FBAR filing requirement**

As previously explained by this Court, residents and citizens of the United States are required to report to the Commissioner of the Internal Revenue certain activity with foreign financial agencies for each year in which the activity occurs.[8]  One such activity is "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country."[9]  The form that needs to be completed for this annual reporting requirement is the Report of Foreign Bank and Financial Accounts (FBAR).  For calendar years before 2017, the FBAR report for foreign financial accounts exceeding $10,000 maintained during a calendar year was due by June 30 of the following calendar year.[10]

Civil penalties can be assessed against an individual who, whether willfully or non-willfully, fails to comply with these reporting requirements.[11]  For willful violations, the penalty assessed is the greater of $100,000 or 50% of the balance in the foreign financial account at the time of the violation.[12]  An FBAR penalty must be assessed within six years from the due date of the FBAR report.[13]  After an assessment, the Government may then bring a civil action to recover the FBAR penalty at any time before the end of the two-year period beginning on the date the penalty was assessed.[14]

---

[8] Order Re: Defendant's Motion for Judgment on the Pleadings, document number 43, page 1-2; *see also* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

[9] 31 C.F.R. § 1010.350(a).

[10] 31 C.F.R. § 1010.306(c).

[11] 31 U.S.C. § 5321(a)(5)(A).

[12] 31 U.S.C. § 5321(a)(5)(C)(i).  There is no reasonable cause exception for willful violations.  31 U.S.C. § 5321(a)(5)(C)(ii).

[13] 31 U.S.C. § 5321(b)(1).

[14] 31 U.S.C. § 5321(b)(2)(A).

14

As an example, for the 2008 calendar year, an individual needing to file an FBAR report was required to have done so by June 30, 2009. If that individual failed to do so, then the IRS could assess the FBAR penalty on or before June 30, 2015. After the assessment, the Government would then have two years from the date of that assessment to bring a civil action to collect any unpaid balance, including interests, costs, and expenses.

There is no dispute that Fariba Cohen was required to file an FBAR for tax year 2008. She is and was a United States citizen who had an interest in and signature authority over a foreign bank account in which the aggregate balance exceeded $10,000 during tax year 2008, and she failed to report her interest to the IRS by June 30, 2009. The only issue left to be resolved is whether her failure to timely file an FBAR was willful. The government has the burden to establish her willfulness in this case by a preponderance of the evidence.[15]

## C. Willfulness

### 1. Recklessness

Congress provided heightened penalties for willful failures to file the FBAR form.[16] Although Congress did not define the term "willful" in this context, the Supreme Court has made clear that "where willfulness is a statutory condition of civil liability," the term covers "not only knowing violations of a standard, but reckless ones as well."[17] In civil cases,

---

[15] See *United States v. Garrity*, 304 F. Supp. 3d 267, 270 (D. Conn. 2018); *United States v. Bohanec*, 263 F. Supp. 3d 881, 889 (C.D. Cal. 2016) (J. Pregerson).

[16] *See* 31 U.S.C. § 5321(a)(5)(C), (D).

[17] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007); *see also, e.g., United States v. Ill. Cent. R. Co.*, 303 U.S. 239, 242-43 (1938) (holding, in civil penalty context, that willfulness includes "careless disregard whether or not one has the right so to act").

1  recklessness refers to "conduct violating an objective standard: action

2  entailing 'an unjustifiably high risk of harm that is either known or so

3  obvious that it should be known.'"[18]  Nothing in the text of 31 U.S.C. § 5321

4  suggests that a different standard applies here.  Numerous courts have

5  recognized that reckless conduct is sufficient for the imposition of willful

6  FBAR penalties.[19]  With respect to the FBAR filing requirement in

7  particular, a person acts recklessly when she "ought to have known" that

8  "there was a grave risk that the filing requirement was not being met" and

9  she was "in a position to find out for certain very easily."[20]

10       "For an individual to have acted 'wilfully,' an individual need not have

11  been subjectively aware of the FBAR reporting requirement or else an

12  individual would be able to defeat liability by deliberately avoiding learning

13  of his or her legal duties."[21]  Under the civil standard, an improper motive or

14  bad purpose is not necessary to establish willfulness.[22]  Furthermore, as is

---

[18] *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

[19] *Norman v. United States*, No. 2018-2408, 2019 WL 5849508, at *2 (Fed. Cir. Nov. 8, 2019) (willfulness in the FBAR context includes recklessness); *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018); *Kimble v. United States*, 141 Fed. Cl. 373, 385 (2018), *appeal filed*, No. 19-1590 (Fed. Cir.); *Bohanec*, 263 F. Supp. 3d at 888-89; *United States v. Williams*, 489 F. App'x 655, 660 (4th Cir. 2012) ("[R]eckless conduct . . . satisfies the proof requirement under § 5314."); *United States v. McBride*, 908 F. Supp. 2d 1186, 1204-05 (D. Utah 2012). *See also United States v. Rum*, No. 2019 WL 3943250, at *8 (M.D. Fla. Aug. 2, 2019) (A taxpayer's failure to review their tax returns for accuracy despite repeatedly signing them, along with "falsely representing under penalty of perjury" that they do not have a foreign bank account (by answering "no" to question 7(a) on Line 7a of Schedule B of a 1040 tax return) *in and of itself* supports a finding of "reckless disregard" to report under the FBAR), *citing Kimble*, 141 Fed. Cl. at 376.

[20] *Bedrosian*, 912 F.3d at 153.

[21] *McBride*, 908 F. Supp. 2d at 1210, quoting *United States v. Jinwright*, 683 F.3d 471, 478 (4th Cir.2012).

[22] *Id.*; *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 83 (4th Cir. 2009); *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979).  Similarly, a "subjective good faith

16

the case in many other contexts, "[a] taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents."[23]

### 2. Willful Blindness

Willful blindness, or intentional ignorance of the relevant facts, also constitutes willfulness.[24]  "'[W]illful blindness' may be inferred where 'a defendant was subjectively aware of a high probability of the existence of a tax liability and purposefully avoided learning the facts point to such liability.'"[25]  Stated differently, the penalty applies under a willful blindness theory if she "made a 'conscious effort to avoid learning about reporting requirements.'"[26]  As explained by the Fourth Circuit in *United States v. Williams*, a taxpayer's signature is prima facie evidence that she knew the contents of the return, and at a minimum Line 7a's directions to "[s]ee instructions for exceptions and filing requirements for Form TD F 90–22.1" puts the taxpayer on inquiry notice of the FBAR requirement.[27]  Failure to read the tax return before signing it constitutes a conscious effort to avoid learning about reporting requirements, and false answers on the federal tax

---

belief that one's conduct is lawful" does not preclude the imposition of a penalty in these circumstances.  *Lefcourt v. United States*, 125 F.3d 79, 82 (2d Cir. 1997).

[23] *Williams*, 489 F. App'x at 659 (quoting *Greer v. Commissioner*, 595 F.3d 338, 347 n.4 (6th Cir. 2010), and citing *United States v. Doherty*, 233 F.3d 1275, 1282 n.10 (11th Cir. 2000)); *McBride*, 908 F. Supp. 2d at 1206 ("[T]axpayers are charged with the knowledge, awareness, and responsibility for their tax returns, signed under penalties of perjury, and submitted to the IRS.").

[24] See *Williams*, 489 F. App'x at 658-59; *McBride*, 908 F.Supp. 2d at 1205.

[25] *Williams*, 489 F.App'x 658 (quoting *United States v. Poole*, 640 F.3d 114, 122 (4th Cir. 2011)).

[26] *Williams*, 489 F. App'x at 659 (quoting *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991)).

[27] *Williams*, 489 F. App'x at 659.

return evidence conduct that was meant to conceal or mislead sources of income or other financial information.[28]  Evidence of acts to conceal income and financial information, combined with the defendant's failure to pursue knowledge of further reporting requirements as suggested on Schedule B, provide a sufficient basis to establish willful blindness to the FBAR requirement.[29]

### 3.   It is appropriate for the Court to decide willfulness on summary judgment

Although willfulness is generally a question of fact, courts have decided the question on summary judgment where the undisputed facts demonstrated that the civil willfulness standard was satisfied.[30]  Indeed, in the analogous context of payroll tax penalties under 26 U.S.C. § 6672 of the Internal Revenue Code, the Ninth Circuit has regularly held that a determination of willfulness was appropriate on summary judgment.[31]  In that context, "in the absence of disputed material facts, summary judgment represents a favored mechanism to secure the 'just, speedy, and inexpensive

---

[28] *Id.*

[29] *Id.*

[30] *Id.*, at 658 (whether a person has willfully failed to comply with a tax reporting requirement is a question of fact); *United States v. Horowitz*, 361 F. Supp. 3d 511, 529 (D. Md. 2019), *appeal filed*, No. 19-1280 (4th Cir.); *Kimble*, 141 Fed. Cl. at 385-86; *United States v. Kelley-Hunter*, 281 F. Supp. 3d 121, 124 (D.D.C. 2017).

[31] *See Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976) (summary judgment in favor of the government); *Ruggieri v. United States*, 145 F.3d 1340 (9th Cir. 1998); *Ryther v. United States*, 540 F. App'x 803 (9th Cir. 2013).

determination' of such issues."[32]  Thus, "[i]f the record justifies it, willfulness may be determined at the summary judgment stage."[33]

**D. The evidence shows that Fariba Cohen's failure to file an FBAR was reckless and constituted willful blindness**

Based on the guidance from *Williams*, Fariba Cohen's conduct was reckless and constituted willful blindness:

- Fariba Cohen is a college educated U.S. citizen who ran a successful business selling insurance policies through State Farm.

- In the late 1990s, Fariba and Saeed Cohen held money in their individual names in foreign bank accounts, and when Fariba and Saeed Cohen filed amended tax returns for tax years 1996 and 1997, they reported their interest in foreign accounts on Schedule B.

- In 2001, Fariba and Saeed Cohen established the entity Fariba Lauren, which had a bank account where Fariba Cohen was the sole signatory, the account was funded by cashier's checks from the International Bank of China, and then $800,000 from that account was used to pay down the mortgage on Fariba Cohen's personal residence.

- In 2004, Fariba Cohen met with her attorney Fred Mashian who assisted in forming two foreign entities: L&C Lighting Technology Ltd. and Liform Lite Industrial Co. Ltd. to hold foreign bank accounts at Leumi Bank and Union Bancaire Privee respectively. Fred Mashian explained the documents to Fariba Cohen, which she read and signed.  For both companies, Fariba Cohen held half the

---

[32] *Plett v. United States*, 185 F.3d 216, 223 (4th Cir. 1999) (quoting Fed. R. Civ. P. 1).

[33] *Skouras v. United States*, 26 F.3d 13, 14 (2d Cir. 1994).

19

stock and was a director.  For L&C Lighting Technology, Ltd., she was also a corporate officer.

- During the 2004 meeting, attorney Fred Mashian explained to Fariba Cohen the FBAR filing requirements.

- In 2004, Fariba Cohen signed a corporate resolution to open an account at Union Bancaire Privee, and signed a document to open a bank account at Union Bancaire Privee, which was owned by Liform Lite Industrial Co. Ltd., a company for which she owned half the stock and was a director.  During 2008, the unreported Union Bancaire Privee account had a maximum value of $2,336,899.

- In 2005, Fariba Cohen signed the corporate resolution for L&C Lighting Technology, Ltd. to open the bank account with Leumi Bank, then met with a bank representative and signed documents to open the account.  The documents Fariba Cohen signed opening a bank account with Leumi Bank gave her individual signature authority and provided a Hold Mail instruction.  Fariba Cohen knew that when the Leumi Bank account was opened, it had an account balance of between $1,300,000 and $1,500,000.

- Fariba Cohen also signed bank documents to open foreign bank accounts with Israel Discount Bank and RBS Coutts AG.  The account at Israel Discount Bank had a codename.  In 2008, the Israel Discount bank had a maximum value of $1,093,373, and the RBS Coutts AG account had a maximum value of $2,839,899.

- In 2007, a Swiss banker came to the home of Fariba and Saeed Cohen with $100,000 in cash, which Fariba Cohen counted and signed handwritten receipts.

- For tax years 2003 through 2008, Fariba Cohen and Saeed Cohen filed joint federal income tax returns prepared by Hamid Fani, CPA.

20

Fariba Cohen had access to Hamid Fani, was in direct contact with him on multiple occasions, and contacted his staff to provide information.

- For tax years 2003 through 2008, Fariba Cohen reported interest income from domestic banks, such as Washington Mutual, Pacific Crest Bank, and Wells Fargo, but made no mention of the foreign bank accounts.

- For tax years 2003 through 2008, Fariba Cohen did not disclose her foreign bank accounts on her tax returns, and responded "No" each time on Schedule B of the tax return when asked if she had an interest in a foreign account.

- Fariba Cohen signed her tax returns under penalties of perjury indicating that she had reviewed her tax returns and that, to the best of her knowledge and belief, the returns were "true, correct, and complete."

- For tax years 2003 through 2008, Saeed and Fariba Cohen underreported on average $6,379,427 per year or 71% of their income, and the unreported income was deposited into foreign accounts. When amended tax returns were ultimately filed by Saeed Cohen, not by Fariba Cohen, for tax years 2003 through 2008, additional taxes totaled over $18,000,000.

It is undisputed that Fariba Cohen: (a) knew that she had foreign accounts held by foreign corporations because of the documents she signed to establish both, (b) she was a United States citizen required to file an FBAR for tax year 2008, (c) she had a professional tax return preparer and lawyer available to answer questions, (d) she signed tax returns stating that she had no foreign accounts after the accounts were formed, and (e) she

21

repeatedly signed tax returns that omitted most of her income and understated millions of dollars of tax liabilities.

### 1.   Fariba Cohen's failure to timely file an FBAR for 2008 was the result of recklessness

The Federal Circuit Court of Appeals in *Norman v. United States*, in its opinion entered on November 8, 2019, confirmed that willfulness in the FBAR context includes recklessness, and actual knowledge of the obligation to file an FBAR is not required.[34]  When describing an example that would not constitute a willful failure to file an FBAR, the Court in *Norman* stated "[f]or example, an FBAR violation would generally not be willful where a taxpayer did not know about, and had no reason to know about, her overseas account."[35]  The Court also held that "[t]he fact that Ms. Norman did not read her 2007 tax return supports that she acted recklessly toward the existence of reporting requirements."[36]

Fariba Cohen's conduct meets the standard for willfulness under *Norman, Bedrosian,* and *Williams*.  She knew she had numerous foreign bank accounts, including the Leumi Bank account.  She signed the paperwork to form multiple foreign corporations, including L&C Lighting Technology, Ltd. which held the Leumi Bank account.  She was an officer and director of L&C Lighting and owned half the stock when she signed the corporate resolution to open the bank account at Leumi Bank.  She met with a bank representative for Leumi Bank and signed the document to open a bank account which gave her individual signature authority.  She knew

---

[34] No. 2018-2408, 2019 WL 5849508, at *2 (Fed. Cir. Nov. 8, 2019), citing *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018) and *United States v. Williams*, 489 F. App'x 655, 658-59 (4th Cir. 2012).

[35] *Id.*

[36] *Id.* at *4.

when the Leumi Bank account was opened in 2005 that it had a balance of between $1,300,000 and $1,500,000.  She knew that she had signature authority for other bank accounts, such as RBS Coutts AG held in the name of L&C Lighting, Union Bancaire Privee held in the name of Liform Lite Industrial Co., Ltd., and Israel Discount Bank held in her name with Saeed Cohen, each of which had millions of dollars on deposit.

She knew about the FBAR filing requirement because her attorney told her about it when he helped her form L&C Lighting.  She also she signed multiple tax returns under penalties of perjury declaring that she had examined the accompanying schedules, including Schedule B, which referred to the FBAR form TD F 90-22.1, and the corresponding instructions made it clear that the FBAR was due on June 30 of the following year.  Although she had foreign bank accounts in the 1990s which she reported on Schedule B of her amended returns for tax years 1995 through 1997, she failed to disclose any of the foreign bank accounts on her tax returns for tax years 2003 through 2008, and during those same years failed to report millions of dollars of income held in those foreign accounts.

The facts establish that she acted willfully under the standards set forth in *Norman, Bedrosian,* and *Williams*.  The United States need not show that Fariba Cohen had actual knowledge of the FBAR filing requirement, only that she acted recklessly, and the evidence indicates that she did so.  She was a United States citizen with signature authority for multiple foreign bank accounts that had balances of over $10,000, so she clearly ought to have known that there was a grave risk that the FBAR filing requirement was not being met, and she was in a position to find out for certain very easily, such as asking her then-husband Saeed Cohen, her accountant Hamid Fani, or her attorney Fred Mashian.  Her failure to do so was reckless and the FBAR penalty for willful failure to comply was appropriate.

1

2

### 2.   Fariba Cohen's failure to timely file an FBAR for 2008 was also the result of willful blindness

3   Fariba Cohen engaged in willful blindness when she failed to timely

4   file an FBAR for tax year 2008.  She went to college and ran a successful

5   business selling insurance.  She has long been included in the family

6   finances.  Since at least the 1990s, she and Saeed Cohen had foreign bank

7   accounts which they reported to the IRS.  In the early 2000s, she and her

8   husband formed Fariba Lauren that held a domestic bank account for which

9   she had sole signature authority, and after that account received funds from

10   a foreign account, $800,000 was used to pay down her mortgage.  In 2004,

11   her attorney helped set up L&C Lighting Technology, Ltd. and Liform Lite

12   Industrial Co. Ltd. to hold foreign bank accounts at Leumi Bank and Union

13   Bancaire Privee respectively.  In 2005, she met with a representative for

14   Leumi Bank to open a bank account.  She had signature authority and

15   requested that the bank not send her mail.  She also opened other foreign

16   bank accounts with Israel Discount Bank and RBS Coutts AG.  In 2007, a

17   Swiss banker came to her home with $100,000 in cash, which she counted

18   and signed receipts and authorized a transfer from a Swiss bank account

19   held by L&C Lighting Technology, Ltd. at EFG Bank, to an unrelated party's

20   account.

21   The Cohens were required to report all of the income from Elco

22   Lighting on their tax returns.  Elco Lighting did not report its income that

23   was deposited into the foreign accounts.  Fariba Cohen failed to report this

24   hidden income for tax years 2003 through 2008, and for those same years she

25   failed to disclose any interest in foreign bank accounts.  For tax years 2003

26   through 2008, Saeed and Fariba Cohen underreported on average $6,379,427

27   per year or 71% of their income.

28

Fariba Cohen knew she had signature authority for numerous foreign bank accounts which had significant account balances. She signed and filed numerous tax returns that reported other domestic bank accounts, such as Washington Mutual, Pacific Crest Bank, and Wells Fargo, but made no mention of the foreign bank accounts. The FBAR filing requirement was referenced on Schedule B, which she affirmed she read by signing her tax returns under penalties of perjury, and was readily available in the instructions to Schedule B. The only way she could have avoided learning of the FBAR requirements was to make a conscious effort to avoid learning of them. Her failure constitutes willful blindness, in an effort to avoid paying millions of dollars in taxes, and is sufficient to establish willfulness. Alternatively, here conduct was reckless as discussed above, and under either standard she is liable for willful failure to timely file an FBAR for tax year 2008.

## V. Conclusion

Based on the foregoing, the United States is entitled to summary judgment against Fariba Cohen because she willfully failed to timely file an FBAR for tax year 2008.

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: November 15, 2019      /s/
                             GAVIN GREENE
                             Assistant United States Attorney
                             Attorneys for the United States of America