GARY M. SLAVETT (SBN 187069)
gslavett@hsdtaxlaw.com
DAVID J. WARNER (SBN 261718)
dwarner@hsdtaxlaw.com
**HOLTZ, SLAVETT & DRABKIN, APLC**
315 S. Beverly Drive, Suite 515
Beverly Hills, CA 90212
Telephone: (310) 550-6200
Fax: (310) 774-3904

Attorneys for Defendant Fariba Ely Cohen

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FARIBA ELY COHEN,<br><br>Defendant. | Case No.: 2:17-CV-1652 MWF (JCx)<br><br>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Judge:  Michael W. Fitzgerald<br><br>Date:  December 16, 2019<br>Time: 10:00 a.m.<br>Courtroom: 5A |

On November 15, 2019, Plaintiff United States of America ("Plaintiff") filed a Motion for Summary Judgment (ECF Doc. No. 57) (the "Motion").  For the reasons stated herein and in Defendant's Statement of Genuine Disputes of Material Fact in Opposition to Motion for Summary Judgment filed concurrently herewith, there is at least a genuine issue of material fact regarding whether Defendant Fariba Cohen willfully violated the FBAR statute.  In fact, Fariba Cohen's violation was nonwillful.  As such, the Court should deny the Motion in full, and the Court should grant summary judgment to Fariba Cohen pursuant to Fed. R. Civ. Proc. 56(f)(1).

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................7

II.     THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT MET ITS BURDEN OF PROOF TO SHOW THAT (1) THERE IS NO GENUINE ISSUE OF MATERIAL FACT, AND (2) PLAINTIFF WOULD BE ENTITLED TO A DIRECTED VERDICT. ...................................................................9

III.    THE MOTION SHOULD BE DENIED BECAUSE THERE IS AT LEAST A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE GOVERNMENT FILED THIS ACTION AFTER THE EXPIRATION OF THE TWO-YEAR PERIOD IN 31 U.S.C. § 5321(b)(2). ...................................................10

IV.     THE MOTION SHOULD BE DENIED BECAUSE THERE IS AT LEAST A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER FARIBA COHEN WILLFULLY VIOLATED THE FBAR FILING REQUIREMENT. ...............13

     A.     Willfulness Defined. ...................................................13

     B.     The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Knew About the FBAR Filing Requirement Before the Deadline for the 2008 FBAR Form. ...............15

     C.     The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Signed Her Form 1040 Income Tax Return for Certain Tax Years, Including the 2008 Tax Year. ...............17

     D.     The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen was Willfully Blind or Reckless in Failing to Timely File an FBAR Form for the 2008 Calendar Year. ...............20

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

E.    The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Signed Many of Documents Related to the Foreign Bank Accounts Opened by Saeed Cohen..............................................22

F.    The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Knew How Much Money Saeed Cohen Had in the Foreign Bank Accounts...........................................................................23

G.    The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen "Ran a Successful Business Selling Insurance." ...................................................................................................................25

H.    The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Knew That Fred Mashian was Opening Foreign Entities..........................................................................................................26

I.    There is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Willfully Violated the FBAR Filing Requirements Because Fariba Cohen Voluntarily Disclosed the Foreign Bank Accounts Before the Service Ever Learned About Them. ..............................................................................................................27

J.    There is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Willfully Violated the FBAR Filing Requirements Because Saeed Cohen Controlled All the Finances and Saeed Cohen Physically, Mentally, and Emotionally Abused Fariba Cohen During Their Marriage....................................28

K.    In Summary, There is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Willfully Violated the FBAR Filing Requirements.........................33

V.   FARIBA COHEN DID NOT WILLFULLY VIOLATE THE FBAR REPORTING REQUIREMENTS, AND PURSUANT TO FED. R. CIV. PROC. 56(f)(1) THIS COURT

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SHOULD GRANT SUMMARY JUDGMENT FOR FARIBA COHEN THAT HER

FBAR VIOLATION WAS NONWILLFUL..................................................................34

VI.     CONCLUSION.............................................................................................36

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 9

*Bryan v. United States*, 524 U.S. 184 (1998) ..................................................................... 13

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474 (9th Cir. 2000) ......... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................... 9

*Cheek v. United States*, 498 U.S. 192 (1991) ..................................................................... 13

*Denbo v. United States*, 988 F.2d 1029 (10th Cir. 1993) .................................................. 13

*Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993) ............................... 10

*Kimble v. United States*, 141 Fed. Cl. 373 (Ct. Cl. 2018) .................................................. 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ......................... 10

*Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739 (11th Cir. 1996) .................................... 10

*Norman v. United States*, 138 Fed. Cl. 189 (Fed. Cl. 2018) .............................................. 17

*Rykoff v. United States*, 40 F.3d 305 (9th Cir. 1994) ........................................................ 14

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) .................................................... 13, 14

*United States v. Bussell*, case no. CV 15-02034 (C.D. Cal. Dec. 8, 2015) ....................... 15

*United States v. Flume*, case no. 5:16-cv-73 (S.D. Tex. Aug 22, 2019) ........................... 14

*United States v. Gormley*, 201 F.3d 290 (4th Cir. 2000) ................................................... 14

*United States v. Markus*, case no. 16-2133 (D.N.J. July 17, 2018) .................................. 15

*United States v. Pomponio*, 429 U.S. 10 (1976) ................................................................ 13

*United States v. Poole*, 640 F.3d 114 (4th Cir. 2011) ....................................................... 14

*United States v. Rum*, case no. 8:17-cv-626-T-35AEP (M.D. Fla. Aug. 2, 2019) ............ 15

*United States v. Schwarzbaum*, case no. 18-cv-81147 (S.D. Fla. Aug. 23, 2019) ............ 14

*United States v. Williams*, 489 F. App'x 655 (4th Cir. 2012) ............................... 14, 17, 20

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Statutes**

31 U.S.C. § 5321(a)(5)............................................................................7

31 U.S.C. § 5321(a)(5)(B)(i)........................................................13, 35, 36

31 U.S.C. § 5321(a)(5)(B)(ii) ...............................................................13

31 U.S.C. § 5321(a)(5)(C) ....................................................................13

31 U.S.C. § 5321(b)(1)..........................................................................11

31 U.S.C. § 5321(b)(2)......................................................................7, 10

**Rules**

Fed. R. Civ. Proc. 56(a) .........................................................................9

Fed. R. Civ. Proc. 56(c)(1)......................................................................9

Fed. R. Civ. Proc. 56(f)(1) ............................................................8, 34, 36

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I.     **INTRODUCTION**

The Motion fails to meet its initial burden for summary judgment because Plaintiff fails to cite uncontested facts to support each element of its cause of action.  Defendant has cited many genuine issues of material fact that at least create trial issues and prevent summary judgment.

This case involves the Report of Foreign Bank and Financial Accounts ("FBAR") and the assessment by the Internal Revenue Service (the "Service") of a willful penalty (or penalties) pursuant to 31 U.S.C. § 5321(a)(5) ("FBAR penalty") against Fariba Cohen for the 2008 calendar year.  The parties do not dispute that there were foreign bank accounts in the name of Fariba Cohen during 2008 and that Fariba Cohen had an obligation to file the FBAR form for the 2008 calendar year.  The parties dispute two issues:

1. Did Plaintiff file this suit after the expiration of the two-year period in 31 U.S.C. § 5321(b)(2)?
2. Was Fariba Cohen's violation of the FBAR filing requirement willful?

For the reasons discussed below, each of these two issues contain at least genuine issues of material fact.

In the Motion, Plaintiff does not discuss the two assessments that were at issue in Defendant's Motion for Judgment on the Pleadings (ECF Doc. No. 35).  Plaintiff has not established through the Motion and the statement of uncontroverted facts that it timely filed this suit.  In fact, Plaintiff assessed the FBAR penalty on May 22, 2014, and filed this suit on March 1, 2017.  Thus, the suit was untimely under 31 U.S.C. § 5321(b)(2).

Moreover, there is at least a genuine issue of material fact whether Fariba Cohen meets some of the most important factors that are present in almost all cases in which courts have found that individuals willfully violated the FBAR filing requirement.  First,

Fariba Cohen did not know about the FBAR filing requirement on the due date for the 2008 FBAR form (June 30, 2009).  Second, Plaintiff cannot show that Fariba Cohen signed her Form 1040 federal income tax return for taxable year 2008.  Third, Plaintiff cannot show that Fariba Cohen was willfully blind because her now ex-husband, Saeed Cohen (also known as Steve Cohen), handled all interactions with the return preparer, and Saeed Cohen falsely told the return preparer that they did not have any foreign bank accounts.

Moreover, Plaintiff does not acknowledge the primary role of Saeed Cohen in the matters discussed in the Motion.  Fariba Cohen was married to her now ex-husband, Saeed Cohen, for over 20 years.  During those 20 years, Saeed Cohen handled all the finances, including creating new business entities and handling the preparation of their tax returns.  For over 20 years, Fariba Cohen lived in a state of fear and suppression— fearing Saeed Cohen's physical, mental, and emotional abuse.  Saeed Cohen often signed Fariba Cohen's signature without her knowledge.  When Fariba Cohen did sign financial documents, it was at the direction of her now ex-husband.  She signed these documents out of a fear of the abuse she would receive from Saeed Cohen if she did not follow Saeed Cohen's instructions.

For these reasons and the reasons discussed below, there is a at least genuine issue of material fact regarding whether Fariba Cohen willfully violated the FBAR statute.  For these reasons, the Motion should be denied in full.

Moreover, this opposition is supported by the facts in the Motion, the attached Declaration of David J. Warner (the "Warner Declaration") (with exhibits thereto), and the depositions lodged concurrently with this opposition.  Based on this information, the Court should grant summary judgment for Fariba Cohen pursuant to Fed. R. Civ. Proc. 56(f)(1) and find that Fariba Cohen is liable for one $10,000 penalty for a nonwillful violation of the FBAR filing requirement for calendar year 2008.

///

///

## II. THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT MET ITS BURDEN OF PROOF TO SHOW THAT (1) THERE IS NO GENUINE ISSUE OF MATERIAL FACT, AND (2) PLAINTIFF WOULD BE ENTITLED TO A DIRECTED VERDICT.

Federal Rule of Civil Procedure 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  The movant has the initial burden to establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

Once the movant meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. Proc. 56(c)(1).  To show a genuine issue of material fact, the nonmovant must provide information on which a jury could reasonably find for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment . . . ." *Anderson*, 477 U.S. at 248.  In evaluating a motion for summary judgment, a court does not determine credibility or weigh conflicting evidence. *See id.* at 249.  A court is required to

draw all inferences in a light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is not appropriate when a court must determine witness credibility or weigh conflicting views of material facts.  *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

In this case, Plaintiff is both the movant and the party that bears the ultimate burden of proof at trial.  Therefore, Plaintiff must establish that (1) no genuine issue of material facts exist, and (2) Plaintiff would be entitled to a directed verdict at trial.  Moreover, the Court must draw all inferences in a light most favorable to Fariba Cohen (the nonmovant).  Plaintiff cannot meet its burden for the reasons discussed below, and the Court should deny the Motion.

## III.   THE MOTION SHOULD BE DENIED BECAUSE THERE IS AT LEAST A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE GOVERNMENT FILED THIS ACTION AFTER THE EXPIRATION OF THE TWO-YEAR PERIOD IN 31 U.S.C. § 5321(b)(2).

If an FBAR penalty is assessed but not paid in full, the United States "may commence a civil action to recover a civil penalty assessed under subsection (a) at any time before the end of the 2-year period beginning on . . . the date the penalty was assessed."[1]  31 U.S.C. § 5321(b)(2).

In this case, Fariba Cohen initially entered the Service's Offshore Voluntary Disclosure Initiative ("OVDI").  The Service proposed a large miscellaneous penalty in the OVDI that did not consider Fariba Cohen's personal situation.  On the advice of her

---

[1] Section 5321(b)(2) states that the limitation period is two years from the later of (1) the assessment date, or (2) the date a judgment becomes final in a criminal conviction in connection with the same activity as the FBAR.  In this case, the second potion of the statute (related to a criminal conviction) is not relevant.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

tax attorney, Fariba Cohen opted out of OVDI, and the Service examined her FBAR filing obligation for the 2008 calendar year.  An FBAR for the 2008 calendar year was due on June 30, 2009.  Under 31 U.S.C. § 5321(b)(1), an FBAR penalty must be assessed within six years from the due date for the FBAR.  For the 2008 calendar year, the statute of limitations on assessment expired on June 30, 2015.

The Service assessed an FBAR penalty against Fariba Cohen for the 2008 calendar year.  The Service assessed this penalty on May 22, 2014.  *See* Complaint (ECF Doc. No. 1), ex. 17; *see also* Warner Declaration, ex. A.  Two years from this date is May 22, 2016.  Thus, under 31 U.S.C. § 5321(b)(2), Plaintiff had until May 22, 2016 to file a complaint to reduce the FBAR penalty to judgment.  Plaintiff did not file a complaint on or before May 22, 2016.  Instead, Plaintiff filed the Complaint on March 1, 2017, which was 283 days after the two-year period had expired.

Plaintiff may argue that it filed a notice of errata (ECF Doc. No. 39) to attempt to replace exhibit 17 to the complaint with a new exhibit 17 showing an assessment date of March 5, 2015.  There is a genuine issue as to when the Service assessed the FBAR penalty (or penalties) at issue in this case and whether Plaintiff timely filed its complaint.  In addition, under the applicable standard of review for summary judgment motions, factual issues like this must be viewed in a light most favorable to Fariba Cohen.

Moreover, when this issue was raised in Fariba Cohen's Motion for Judgment on the Pleadings, Plaintiff implied that the Service assessed not one but two FBAR penalties for the same amount and the same calendar year (one on May 22, 2014, and another on March 5, 2015).  According to Plaintiff in its Opposition to Defendant's Motion for Judgment on the Pleadings:

> [T]he IRS assessed an FBAR penalty in the amount of $1,549,849 against Defendant on March 5, 2015. . . . While there was a previous assessment on May 22, 2014, each assessment

represented half of the amount that the IRS was legally allowed
to assess against Defendant . . . .

*See* ECF No. 40, at 7.  Moreover, in response to an interrogatory served by Fariba Cohen, Plaintiff stated, "The FBAR penalty assessed against Fariba Cohen, exclusive of interest and penalties, exceeded $1,549,849.00 on March 5, 2015, and all dates thereafter." *See* Warner Declaration, ex. B, at 5.

Thus, the Service appears to have assessed FBAR penalties against Fariba Cohen in excess of $3 million.  However, in Plaintiff's statement of uncontroverted facts (#192), Plaintiff states, "As of September 27, 2016, Fariba Cohen was liable to the United States for $1,719,865.32, which is comprised of the FBAR penalty, interest, and penalties for late payment under 31 U.S.C. § 3717(e)(2) for tax year 2008." These two assertions cannot co-exist.  Either Fariba Cohen is liable for penalties in excess of $3 million or she is liable for penalties of roughly $1.7 million.

The total amount of the FBAR penalties is a material fact in this case for two main reasons.  First, the total amount of the FBAR penalties is necessary to help determine whether the government timely filed this suit.  If the government believes that Fariba Cohen only owes only roughly $1.5 million penalty (plus interest and penalties), then the second assessment on March 5, 2015 was a nonevent (after all, the single penalty had already been assessed on May 22, 2014).  As such, this action would have been filed untimely.

Second, even if the two-year period has expired, the government can still collect on those penalties in perpetuity through federal offsets.  The two-year period is not a statute of limitations on collection; it is a time window in which the government may reduce an assessment to judgment.  Plaintiff has provided conflicting information on the total amount of FBAR penalties that Fariba Cohen owes.  A factfinder cannot evaluate the reasonableness or excessiveness of a penalty without first knowing the total amount of that penalty.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As such, there are at least two genuine issues of material fact regarding the Service's assessment of an FBAR penalty against Fariba Cohen.  These are important facts and issues that should be resolved through trial.  For these reasons alone, this Court should deny the Motion.

## IV.   THE MOTION SHOULD BE DENIED BECAUSE THERE IS AT LEAST A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER FARIBA COHEN WILLFULLY VIOLATED THE FBAR FILING REQUIREMENT.

### A.   Willfulness Defined.

Section 5321(a)(5)(C) of Title 31 provides that in "the case of any person willfully violating, or willfully causing any violation of, any provision of" the FBAR filing requirement, an individual is liable for a penalty equal to the greater of $100,000 or 50% of the account balance on the violation date.  If a violation of the FBAR filing requirement was not willful, then the maximum penalty is $10,000 per violation.  *See* 31 U.S.C. § 5321(a)(5)(B)(i).  In addition, if the violation is nonwillful, then no penalty may apply if the individual can show that they had reasonable cause.  *Id.* § 5321(a)(5)(B)(ii).

Willfulness is "is a 'word of many meanings whose construction is often dependent on the context in which it appears.'"  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) (quoting *Bryan v. United States*, 524 U.S. 184, 191 (1998)).  The most common definition of willfulness is the "voluntary, intentional violation of a known legal duty."  *United States v. Pomponio*, 429 U.S. 10, 13 (1976); *see also Cheek v. United States*, 498 U.S. 192 (1991).  Willfulness requires affirmative, voluntary acts by the individual.  *See Denbo v. United States*, 988 F.2d 1029, 1034-35 (10th Cir. 1993) (defining "willful" conduct as a "voluntary, conscious and intentional decision").
///

In certain contexts, willfulness may include reckless conduct as well. *See Safeco*, 551 U.S. at 57. Most courts that have considered FBAR penalties have concluded that willfulness includes reckless conduct.[2]

Willfulness is a fact-intensive inquiry that requires a finding of fact that the individual was willful. *See Rykoff v. United States*, 40 F.3d 305, 307 (9th Cir. 1994); *accord United States v. Gormley*, 201 F.3d 290, 294 (4th Cir. 2000) ("[T]he question of willfulness is essentially a finding of fact."); *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012). Willfulness also can be inferred based on all the facts and circumstances including "willful blindness." Willful blindness is when "a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point to such liability." *United States v. Poole*, 640 F.3d 114, 122 (4th Cir. 2011).

In several cases, courts have considered motions for summary judgment involving willful FBAR penalties. For example, in *United States v. Schwarzbaum*, case no. 18-cv-81147 (S.D. Fla. Aug. 23, 2019), the court stated:

> [A] party's state of mind is a question of fact to be determined by the trier of fact at trial. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991). As such, summary judgment is inappropriate. *See Williams*, 489 F. App'x at 658 ("Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact.").

In *United States v. Flume*, case no. 5:16-cv-73 (S.D. Tex. Aug 22, 2019), the court concluded that there was a genuine issue of material fact whether the individual

---

[2] However, in a recent unpublished opinion involving civil tax promoter penalties, the Ninth Circuit concluded that the term willful does not include reckless conduct. *See Rodgers v. United States*, case no. 18-55009 (9th Cir. June 21, 2019).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

knowingly or recklessly violated the FBAR filing requirement, and the court denied the government's motion for summary judgment.

In other cases, the courts granted the government's motion for summary judgment based on facts that are not present in this case. *See, e.g., United States v. Rum*, case no. 8:17-cv-626-T-35AEP (M.D. Fla. Aug. 2, 2019) (court focused almost exclusively on the individual signing their tax return and the instructions to Schedule B); *Kimble v. United States*, 141 Fed. Cl. 373 (Ct. Cl. 2018) (individual stipulated that she concealed her account from her accountant and other professionals); *United States v. Markus*, case no. 16-2133 (D.N.J. July 17, 2018) (individual agreed in criminal plea agreement that he willfully violated the FBAR filing requirement); *United States v. Bussell*, case no. CV 15-02034 (C.D. Cal. Dec. 8, 2015) (defendant stipulated that she willfully violated the FBAR filing requirement).

In this matter, cases like *Kimble*, *Markus*, and *Bussell* are not applicable because Fariba Cohen has not stipulated or otherwise agreed that she willfully violated the FBAR filing requirement. In addition, *Rum* is highly distinguishable because, as will be discussed below, there is at least a genuine issue of material fact whether Fariba Cohen signed her Form 1040 individual income tax return and whether Saeed Cohen gave her the opportunity to review her tax returns.

For these reasons and as discussed in detail below, this Court should deny the Motion.

**B.  The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Knew About the FBAR Filing Requirement Before the Deadline for the 2008 FBAR Form.**

As noted above, for a violation to be "willful," there must the violation of a "*known* legal duty." Most cases provide that willfulness may be proven through direct

knowledge of the FBAR filing requirement or facts and circumstances that indicate willful blindness or recklessness.

In this case, there is at least a genuine issue of material fact as to whether Fariba Cohen knew about the FBAR filing requirement on or before June 30, 2009 (the due date for the 2008 FBAR). In Plaintiff's statement of uncontroverted facts, Plaintiff states that Fred Mashian told Fariba Cohen about the FBAR filing requirement. However, in Fred Mashian's deposition dated Mach 28, 2011, he stated:

> Q Did you ever discuss *with Mr. Cohen* reporting requirements for foreign bank accounts?
> A Yes, I did.

Deposition of Fred Mashian dated March 28, 2011, 122:22-24 (emphasis added). In addition, Plaintiff cites to testimony by Fred Mashian that is not in the record to support the alleged fact that he told Fariba Cohen about the FBAR filing requirement. In Fariba Cohen's deposition, she stated that Fred Mashian was "not truthful" when saying that he told Fariba Cohen about the FBAR filing requirements. *See* Deposition of Fariba Cohen dated September 17, 2019 ("Fariba Deposition"), 70:17-22.[3]

Therefore, there is at least a genuine issue of material fact whether Fariba Cohen knew about the FBAR filing requirement on June 30, 2009 (the due date for the 2008 FBAR form that is at issue in this case). This fact goes to the heart of this case. The Motion focuses on whether Fariba Cohen *willfully* violated the FBAR filing requirement. There is at least a genuine issue of material fact about this key issue. For this reason alone, the Motion should be denied.

///

///

---

[3] Defendant will lodge the Fariba Deposition concurrent with the filing of this opposition.

**C.**     **The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Signed Her Form 1040 Income Tax Return for Certain Tax Years, Including the 2008 Tax Year.**

For almost all FBAR cases litigated in district court, courts have focused heavily on the fact that the individual signed their tax return and that the signing of this return places the taxpayer on notice of the FBAR filing requirement. *See, e.g.*, *Norman v. United States*, 138 Fed. Cl. 189, 194-95 (Fed. Cl. 2018) (signing return put individual on "inquiry notice" of FBAR filing requirement); *Williams*, 489 F. App'x at 659 (noting that the individual's signature on a return is "prima facie" evidence that the individual knew the contents of his tax return).

The courts focus on knowledge of FBAR because a willful violation requires the violation of a "*known* legal duty" or required factors that show a conscious choice by the individual to avoid learning about such legal duty. For most FBAR cases, courts find willfulness using all facts and circumstances, including the fact that a taxpayer signed their return. Many tax returns include Schedule B (interest and dividends). At the bottom of Schedule B is Question 7a, which asks about foreign bank accounts and directs taxpayers to read the instructions to Schedule B. These instructions then discuss the FBAR form and the FBAR filing requirements. Based on these steps, courts conclude that either (a) a taxpayer knew about the FBAR filing requirement when they signed their return, or (b) a taxpayer was willfully blind. *See, e.g.*, *Williams*, 489 F. App'x at 659; *Norman v. United States*, 138 Fed. Cl. at 195.

However, in this case, Plaintiff cannot support a finding of fact that Fariba Cohen signed her tax returns, including her tax return for the 2008 tax year. The best that Plaintiff can muster is statement of uncontroverted fact #138: "For tax years 2003 through 2008, Fariba Cohen signed some of the tax returns." In fact, Fariba Cohen stated the following in her deposition dated September 17, 2019:

Q.     And you don't know if you signed or didn't sign for tax year 2008?

A.     That's correct.

Fariba Deposition, 27:2-4.

Fariba Cohen also stated the following regarding the tax returns for 2005, 2006, and 2007 tax years:

> [T]hese are the years [2005, 2006, and 2007] that Saeed was completely cut off from me, cut off. That's why I remember those three years that I said I did not sign specifically. These are the years that he was doing — he was very abusive, very manipulative, and very, very, very in his own shell of doing his own things which I wouldn't talk to him for weeks or months. I wouldn't hear from him. That's why I remember those three years that I put that I didn't sign.
>
> Q.     So it's your testimony today that you didn't sign tax returns for tax years 2005, 2006, and 2007?
>
> A.     I believe I did not because of what I remember happening those years between me and Saeed.

Id., 26:6-17.

Hamid Fani prepared and filed the tax returns for Saeed Cohen and Fariba Cohen. Hamid Fani electronically filed the tax returns for the 2003 through 2008 tax years.  For tax years 2005, 2006, 2007, and 2008, Fariba Cohen did not sign the IRS Form 8879 e-filing authorization.  Specifically, the 2008 Form 8879 is only signed by one individual. *See* Warner Declaration, ex. C.  The line for Fariba Cohen's signature as the spouse is blank.  *Id.*

Hamid Fani would send the prepared returns to Saeed Cohen via email.  *See* Deposition of Hamid Fani on May 14, 2019 (the "Fani Deposition"), 41:4-8.[4]  Saeed Cohen would not allow Fariba Cohen to review the returns.  From Fariba Cohen's deposition:

> Q.      Focusing on your tax returns for 2003 through 2008, did you review those returns?
>
> A.      No.
>
> Q.      Did Saeed give the opportunity to review the returns?
>
> A.      Not at all, no.
>
> Q.      What would Saeed do with the tax returns?
>
> A.      If he wanted me to sign them, he would bring it home like — I remember exactly like after what he did at the time with the sign form, sign here. Even he had the pen in his hand, come to the kitchen counter when I was making dinner, and he would say, "Would you just sign here.  By the time you put the dinner on the table, I'll be back. I have to go to the post office." And I would sign. There are some that I don't believe I signed, and I learned later that he have signed for me, or it was my forged signature on.

Fariba Deposition, 134:17 – 135:8.

Based on these statements, there is at least a genuine issue of material fact whether Fariba Cohen signed the e-filing authorization for the 2008 tax year and for other tax years.  This is a material fact because it goes to the heart of the government's case for

---

[4] Defendant will lodge the Fani Deposition concurrent with the filing of this opposition.

willfulness—that a taxpayer who signs a return is charged with knowledge of the contents of that return.  Therefore, the Court should deny the Motion.

**D.**      **The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen was Willfully Blind or Reckless in Failing to Timely File an FBAR Form for the 2008 Calendar Year.**

Willful blindness is generally defined as a "conscious effort to avoid learning about reporting requirements." *Williams*, 489 F. App'x at 659-60.  Willful blindness and recklessness thus involve an opportunity to learn about the filing requirements and a conscious choice to avoid learning.

In this case, Fariba Cohen did not have any such opportunity to learn about the FBAR filing requirements because Saeed Cohen controlled Fariba Cohen's ability to interact with their return preparer, Hamid Fani.  According to Hamid Fani, he directly interacted with Fariba Cohen two or three times total in all the years that Hamid Fani prepared the tax returns for Saeed Cohen and Fariba Cohen.  *See* Fani Deposition, 25:14-17.  Hamid Fani would interact almost exclusively with Saeed Cohen about the information on these tax returns.  Hamid Fani stated, "I would not communicate, you know, that tax return details with Fariba Cohen at all." *Id.*, 21:17-18.  Hamid Fani continued in the deposition,

> Fariba was an insurance agent if I remember correctly. And we might have some questions about income or expenses related to her. But other than that, everything else, all the other information would be provided to us by Steve [Saeed] Cohen.

*Id.*, 21:20-24.

Saeed Cohen insisted that Fariba Cohen provide information about Fariba's Schedule C income and expenses to Saeed, who would then provide it to Hamid Fani. *See* Fariba Deposition, 135:11-13.

Most importantly, Hamid Fani specifically asked Saeed Cohen about foreign bank accounts while Hamid Fani was preparing the 2008 tax return. Before Hamid Fani filed the 2008 tax return, Hamid Fani sent the following email message to Saeed Cohen:

> Saeed:
>
> Hope all is well. I am done with your 2008 taxes except for one item. Did you have a foreign bank A/C during 2008? If yes, I need the year-end statement.
>
> Hamid

*See* Warner Declaration, ex. D. Saeed Cohen did not respond to this email message. *See* Fani Deposition, 20:12-13. Hamid Fani then contacted Saeed Cohen via telephone to follow up on the email message. *Id.* On October 12, 2009, Hamid Fani spoke with Saeed Cohen via telephone, and Saeed Cohen (falsely) stated that he did not have any foreign bank accounts. *Id.*, 21:9-14; Warner Declaration, ex. D ("None per Steve 10/12/09"). Hamid Fani confirmed that he did not communicate with Fariba about this issue or ask Fariba if she had any foreign bank accounts. *See* Fani Deposition, 21:15-24.

Therefore, at the very least, there is a genuine issue of material fact as to whether Fariba Cohen even had the opportunity to learn about the FBAR filing requirements from her return preparer, Hamid Fani. In turn, this creates at least a genuine issue of material fact as to whether Fariba Cohen was willfully blind or reckless related to the filing of the FBAR form for the 2008 calendar year. As such, this Court should deny the Motion. ///

**E.** **The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Signed Many of Documents Related to the Foreign Bank Accounts Opened by Saeed Cohen.**

In the Motion, Plaintiff focuses heavily on Fariba Cohen being named as an officer of certain foreign entities that were used to hold foreign bank accounts. Plaintiff also focuses on the fact that Fariba Cohen allegedly signed many of these foreign bank account documents.

However, Saeed Cohen often signed for Fariba Cohen, including on official documents. For example, Fariba Cohen stated in her deposition:

> Many facts have surfaced for the last nine years or seven years.
> . . . And now it makes me to believe that it might have been that
> Saeed signed for me or might have been that Saeed asked me to
> sign, and I have signed without giving me any chance to review
> any documents.

Fariba Deposition, 25:7-12; *see also id*. 24:18-23. Moreover, Saeed Cohen acknowledged in his deposition in this case on June 11, 2019, that he sometimes signed Fariba Cohen's signature.

Therefore, there is a genuine issue of material fact as to whether Fariba Cohen signed certain documents related to the foreign bank accounts.

///
///
///
///
///
///

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**F.      The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Knew How Much Money Saeed Cohen Had in the Foreign Bank Accounts.**

In the Motion, Plaintiff states, "On or about the time the Leumi Bank account number was opened, Fariba Cohen saw a bank statement from Leumi Bank that had an account balance of between $1,300,000 and $1,500,000." Motion at 6. To reach this conclusion, Plaintiff cites to the following from the Fariba Deposition:

> Q.      You knew at least in 2010 that the Bank Leumi account had between a one million three and a million five hundred thousand dollars in it when it was opened; correct?
>
> A.      I believe so.

Fariba Deposition, 107:11-14. However, this passage must be viewed with the question and answer immediately after it.

> Q.      But at that time you thought that the Bank Leumi account, which is the subject of Exhibit 48, was an account out of Beverly Hills; correct?
>
> A.      Yes.

*Id.*, 107:15-18. As Fariba Cohen stated more fully in her deposition only two pages earlier:

> Now my understanding is for the first time that Bank Leumi Luxembourg in 2005 had that much. But my deposition in November 12, 2010, my understanding was that the Bank Leumi

in Beverly Hills, which is a branch in states, we had that much money in because Saeed Elco business. Amp Plus checking business and line of credit is with Bank Leumi as well. So I thought it's part of the whole deal that we're doing business with, and Saeed was doing business with, and he has a line of credit with.

. . .

My understanding back then as I go back and look, this was the Bank Leumi in Beverly Hills. I didn't know that Saeed is going through them to make an account in Luxembourg.

*Id.*, 105:21 – 106:14.

This conclusion by Fariba Cohen makes sense.  Amp Plus was a substantial business that generated millions of dollars in revenue each year, and Saeed Cohen had accounts with large balances at Bank Leumi in Beverly Hills.  For example, on the original Form 1040 income tax return for the 2006 tax year, Saeed Cohen and Fariba Cohen reported $252,695 in interest income from Bank Leumi.  *See* Fani Declaration, ex. 64.  An account that had $1,300,000 or $1,500,000 at one point might reasonable generate over $250,000 in interest income in a year (if additional funds were added after). In addition, Saeed Cohen had a longstanding relationship with Bank Leumi in Beverly Hills.

Therefore, there is at least a genuine issue of material fact whether Fariba Cohen knew that the Bank Leumi account was a foreign bank account (rather than a domestic account) at the time that the FBAR form for the 2008 calendar year was due.  As such, the Motion should be denied.

///

///

///

**G.    The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen "Ran a Successful Business Selling Insurance."**

In the Motion, Plaintiff lists several factors for why it believes Fariba Cohen willfully violated the FBAR filing requirement.  The very first factor states that Fariba Cohen "ran a successful business selling insurance policies through State Farm."  Motion at 19.  This is not an accurate portrayal of Fariba Cohen and her work.

Fariba Cohen was primarily a stay-at-home mother to her three children.  In 2004 when Saeed Cohen and Fariba Cohen first met with Fred Mashian, Fariba Cohen's three children were ages 14, 11, and 6.  *See* Fariba Deposition, 137:9-11.  On the side, Fariba Cohen sold insurance.  However, this business generated very little income, especially when compared to the total adjusted gross income reported on their original tax returns.

The following is a comparison of the net income from Fariba Cohen's Schedule C business selling insurance to the overall adjusted gross income that was reported on Saeed Cohen and Fariba Cohen's original tax returns:

| Year | Fariba Cohen's Net Profit | Adjusted Gross Income |
|------|---------------------------|-----------------------|
| 2003 | $25,608 | $1,493,587 |
| 2004 | $49,711 | $1,891,260 |
| 2005 | $67,947 | $3,221,462 |
| 2006 | $49,732 | $3,836,086 |
| 2007 | $29,398 | $3,585,909 |
| 2008 | $21,379 | $2,149,346 |

///
///

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Besides Fariba Cohen's Schedule C profit, all other income was earned by Saeed Cohen's businesses.  In addition, the "adjusted gross income" column does not include income earned by Saeed Cohen's businesses that Saeed Cohen siphoned to foreign bank accounts in his control.

Plaintiff also portrays Fariba Cohen as a "college educated" woman.  While it is true that Fariba Cohen attended college, she has a two-year associates degree in science from Santa Monica College.  *See* Fariba Deposition, 134:6-10.  Fariba Cohen has not taken any classes in tax or accounting.  *Id.*, 134:13-16.

At best, this creates a genuine issue of material fact as to whether Fariba Cohen is the sophisticated and highly educated businesswoman that Plaintiff implies in the Motion or whether Fariba Cohen was primarily a stay-at-home mother who had a side business that brought in less than 3% of the family's income in any given year.

## H.   The Motion Should Be Denied Because There Is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Knew That Fred Mashian was Opening Foreign Entities.

Fred Mashian was the trust attorney for Saeed Cohen and Fariba Cohen.  *See* Fariba Deposition, 45:5-7.  Fariba Cohen did not discover until the divorce proceeding between Saeed Cohen and Fariba Cohen that Fred Mashian had set up offshore entities and structures.  *See id.*, 44:24 – 45:8.  Fred Mashian set up these structures based on conversations between Fred Mashian and Saeed Cohen, and Fariba Cohen was not a part of these conversations.  *See id.*

In the Motion, Plaintiff states that Fred Mashian informed Saeed Cohen and Fariba Cohen about FBAR, and Plaintiff quotes from what is identified as Fred Mashian's testimony in the divorce proceeding.  *See* Motion at 4.  However, in Fred Mashian's deposition dated March 28, 2011 (ECF Doc. No. 57-10) (the "Mashian Deposition"), Fred Mashian stated that he discussed the FBAR reporting requirements with Saeed

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Cohen.  *See* Mashian Deposition, 122:22-24.  In his deposition, Fred Mashian does not mention that he ever told Fariba Cohen about the FBAR filing requirements.  *Id.*

While the testimony and deposition statement might be able to coexist, in a motion for summary judgment, these issues must be viewed in a light most favorable to the nonmovant (Fariba Cohen).  Therefore, there is at least a genuine issue of material fact as to whether Fred Mashian ever told Fariba Cohen about the FBAR reporting requirements.

I.      **There is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Willfully Violated the FBAR Filing Requirements Because Fariba Cohen Voluntarily Disclosed the Foreign Bank Accounts Before the Service Ever Learned About Them.**

In the Motion, Plaintiff missed a key fact as to why Fariba Cohen was not willful in violating the FBAR filing requirement.  Once Fariba Cohen learned about the FBAR filing requirement and that she may have a filing requirement, she hired a competent tax attorney and entered the Service's Offshore Voluntary Disclosure Initiative (OVDI). This program is for taxpayers who want to voluntary come forward, declare previously undisclosed foreign accounts, pay taxes and penalties, and stay in compliance going forward.  Once Fariba Cohen learned there was an issue, Fariba Cohen wanted to come into compliance and properly address the issues in the past.  She did this by entering the OVDI program.

Fariba Cohen did not wait to see if the Service would find out about Saeed Cohen's foreign bank accounts.  Instead, she affirmatively disclosed these accounts to the Service out of an abundance of caution.  Once Fariba Cohen learned there was an issue, she immediately took steps to disclose the accounts.  She did not hide the accounts or attempt to move foreign accounts to another bank.

The only reason this case exists is because Fariba Cohen believed the penalties in the OVDI were too high given the facts of her situation.  Fariba Cohen asked the Service

to consider her situation, especially Saeed Cohen's abuse and his control of the foreign activities.  However, the Service persisted with the large penalties.

The facts surrounding OVDI should not be in dispute.  However, these facts create at least a genuine issue of material fact as to whether Fariba Cohen willfully violated the FBAR filing requirement.

**J.      There is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Willfully Violated the FBAR Filing Requirements Because Saeed Cohen Controlled All the Finances and Saeed Cohen Physically, Mentally, and Emotionally Abused Fariba Cohen During Their Marriage.**

In the Motion, Plaintiff focused on documents and who appeared to have signed what documents and whose name was placed on which accounts.  However, this characterization completely ignores the dynamic between Saeed Cohen and Fariba Cohen in their marriage.  To understand Fariba Cohen's role, it is essential to understand her place in the marriage and with Saeed Cohen's finances.

Saeed Cohen kept Fariba Cohen in the dark about the finances, including the foreign bank accounts and foreign entities.  For example, Fariba Cohen did not have any access to the foreign bank accounts.  She stated the following in her deposition in this case:

> If I would go to Bank Leumi in Israel, or you're saying Luxembourg, which I realized later there's a bank in Luxembourg that I was a co-owner. If I would go to Luxembourg or Israel with my passport, I didn't know where to go to get a dollar. This is how much in dark I was.

Fariba Deposition, 89:9-14.

Fariba Cohen also told Fred Mashian sometime before 2011 that she was in the dark about Saeed Cohen's finances.  In Fred Mashian's deposition as part of the divorce proceeding, Fred Mashian conveyed a conversation between Fred Mashian and Fariba Cohen, in which Fariba stated, "'I don't know what we [Fariba and Saeed] have, and I don't know where we stand . . . .'"  Mashian Deposition, 129:4-6.

When Fariba Cohen would ask Saeed Cohen about the finances, Saeed Cohen would either ignore her or lie to her.  From Fariba Cohen's deposition:

> I have the memory of wanting to keep a peaceful house when I was raising three kids. So much pressure. . . . You have no idea my life inside. The memory is not sweet. It still hits me at night. How I just wanted to get out of an abusive marriage and how all this crumbled over my head when I had nothing. God knows I had nothing to do with this. I had no control over what was going on in his business, in our financial world. It's our culture . . . . If he was truthful, none of this would have happened. He would have paid taxes. He would have had real estate here like I asked him to. I took him to buy a condo for our son when he was 18 . . ., and it was $600,000 in Beverly Hills.  He took his jacket and said, "Fariba, when are you going to get it? I don't have that kind of money."  I had no idea this much money was offshore. I had no idea.  And he's not paying taxes on it.

Fariba Deposition, 27:16 – 28:12.

When a foreign banker came to the house and brought an envelope of cash for Saeed Cohen, it was Saeed Cohen (not Fariba Cohen) who counted the cash in the envelope.  *See id.*, 114:18-24.  Fariba Cohen helped serve the banker tea and cookies. However, Fariba Cohen did not otherwise take part in this meeting.  In Fariba's words:

> It was not my business to be concerned or not.  It was his business. This is how I was trained. I would see it now, it's alarming.  If I married again and I see my husband is getting by a Swiss banker hundred thousand dollar cash, it's very alarming. Back then it was his business. I was bringing tea and cookies, and I was helping [], my daughter, with her homework. I was upstairs. I was downstairs. It was his business. I had no saying on how he handle whatever he handle.

*Id.*, 115:18 – 116:1.

Lastly, Fariba Cohen lived in a constant state of fear and submission to Saeed Cohen during their marriage including physical, mental, and emotion abuse by Saeed Cohen.  Fariba Cohen kept contemporaneous records of the fear and abuse through over 25 personal journals that she kept in the years she was married to Saeed Cohen.  *See id.*, 6:10-14.

In 2013, Fariba Cohen was evaluated by Dr. Cheryl Arutt, Psy.D., a psychologist who specializes in evaluating victims and perpetrators of domestic violence.  *See* Deposition of Cheryl Arutt, Psy.D. dated April 19, 2013 (the "Arutt Deposition"), 79:19-22, 82:1-6.  Dr. Arutt determined that it was true that Fariba Cohen suffered violence and abuse.  *Id.*, 78:1-6.  Specifically, Dr. Arutt diagnosed Fariba Cohen with suffering from post-traumatic stress disorder (PTSD) from the abuse she suffered during her marriage with Saeed Cohen.  *See id.*, 98:2-8.  Dr. Arutt states in her deposition:

> Based on 20 years of experience with this, based on having evaluated Fariba Cohen, based on having done assessments with malingering scales and seeing that data on Fariba Cohen, based upon my expertise in trauma and PTSD and then looking at the other version of events, I believe Fariba Cohen.

*Id.*, 82:1-6.  Moreover, Dr. Arutt felt very confident in the diagnosis of Fariba Cohen's PTSD:

> I have sufficient and compelling data to confirm that diagnosis. I have an open mind about any compelling data that could be brought to light that might further deepen my understanding of this case, but I feel very clear about that diagnosis

*Id.*, 98:4-8.

During their marriage, Fariba Cohen was required to follow Saeed Cohen's instructions or there would be physical consequences.  This included following Saeed Cohen's orders and signing any documents that Saeed Cohen demanded that Fariba Cohen sign.  As Fariba stated in her deposition:

> Q.    Did you ever refuse to sign something that Saeed put in front of you?
>
> A.    Not that I remember.
>
> Q.    What do you think would have happened if you had refused to sign something?
>
> A.    I remember one arguments we had. I don't remember exactly what it was about. But I remember how I gave him a cup of tea, a Persian tea, and it was boiling, and I was there with [my three children]. It was after dinner. Something he was reviewing in his head like every day he had something against me. He said -- he always said three things to me in front of the kids even. "You're a liar." "You're a prostitute." "And you're a thief." He started saying those things, and he throw the cup of hot water at me which I dodged, and the kids were there. Things like that.

1    And in October 2005 he hit me in the back which I have a
2    broken disc as a result. I have the MRI result. I had the doctor
3    results. He was pretty abusive mentally, verbally, in any different
4    kind of ways. One night I was not feeling well after a shower so
5    I asked him to call the paramedic. Paramedic came, and they
6    gave me oxygen. When they left, in the morning he said, "You
7    were lucky I was in a good mood. I called the paramedics for
8    you. I shouldn't have called the paramedics. I should have left
9    you die."

10   Another night when he was sleeping, he would have
11   Pellegrino in the middle of night. One morning he said, "Do you
12   know how many times I though what happens if I just hit you in
13   the head with that Pellegrino glass? You're lucky I didn't." He
14   was crazy. He was not well. So I changed my room, and he would
15   kick me in the middle of the night. "You prostitute. Get out of
16   my bed." It was just an exercise of emotional abuse.

17
18   Fariba Deposition, 137:12 – 138:19.
19        Therefore, Saeed Cohen controlled everything in the marriage with Fariba
20   Cohen—the businesses, the finances, and the foreign bank accounts.  Fariba Cohen was
21   left in the dark.  In addition, on the limited occasions when Fariba Cohen asked Saeed
22   Cohen about the finances or spoke up, Saeed Cohen would lie to Fariba Cohen about the
23   finances or would become physically and verbally abusive with her.  As such, there is at
24   least a genuine issue of material fact as to whether Fariba Cohen willfully violated the
25   FBAR filing requirements based on years of physical, mental, and emotional abuse that
26   she suffered at the hands of Saeed Cohen.
27   ///
28   ///

**K.    In Summary, There is at Least a Genuine Issue of Material Fact as to Whether Fariba Cohen Willfully Violated the FBAR Filing Requirements.**

Plaintiff cites to 14 bullet-pointed reasons why Fariba Cohen should be liable for a willful FBAR penalty. *See* Motion at 19-21. However, most of these factors no longer exist once all facts are considered.

Plaintiff relies heavily on a declaration of Saeed Cohen that Saeed Cohen filed in his bankruptcy case during a dispute between Saeed Cohen and Fariba Cohen. In Saeed Cohen's deposition in this case on June 11, 2019, Saeed Cohen could not corroborate most of the facts in that declaration. Hence, Plaintiff is forced to cite to the earlier declaration instead of Saeed Cohen's deposition in this case. However, this declaration is not admissible in court, and there is no evidence available to support these facts that would be admissible. Therefore, these disputed findings of fact should be disregarded pursuant to Fed. R. Civ. Proc. 56(c)(2).

Plaintiff also cannot show that Fariba Cohen knew about the FBAR filing requirement on June 30, 2009—the due date for the 2008 FBAR form. Plaintiff also cannot show that Fariba Cohen signed most, if not all, the e-filing authorizations for the joint tax returns for 2003 through 2008. In fact, the e-filing authorizations for 2005 and 2008 only contain one signature on the line for Saeed Cohen's signature and no signature on the line for Fariba Cohen's signature. In addition, Fariba Cohen testified in her deposition that Saeed Cohen would not allow her the time to review a return even if she did sign it. Plaintiff also states that Fariba Cohen was in direct access with the return preparer; however, this assertion is directly contradicted by the return preparer (Hamid Fani) in his deposition in this case.

Plaintiff makes a big deal about the documents that allegedly show Fariba Cohen's signature. However, Saeed Cohen testified in his deposition that he sometimes signed documents for Fariba Cohen, and Fariba Cohen does not believe that she signed many of these documents.

Moreover, Fariba Cohen did not know that the Bank Leumi (Luxembourg) account was a foreign bank account. She thought it was another account based in Beverly Hills, just like Saeed Cohen's other domestic Bank Leumi accounts.

In addition, once Fariba Cohen learned of the foreign accounts and the FBAR filing obligation, she worked to disclose the accounts. She did not try to conceal the accounts or transfer an account to another foreign bank. Instead, she entered the Service's OVDI program.

Therefore, Plaintiff is left with the fact that these foreign accounts existed, and Saeed Cohen falsely told his return preparer that he did not have any foreign bank accounts. This does not rise to the level of willfulness as to Fariba Cohen, even using the standards of recklessness or willful blindness. At the very least, it creates a genuine issues of material fact that should be resolved at trial.

As such, the Court should deny the Motion.

## V. FARIBA COHEN DID NOT WILLFULLY VIOLATE THE FBAR REPORTING REQUIREMENTS, AND PURSUANT TO FED. R. CIV. PROC. 56(f)(1) THIS COURT SHOULD GRANT SUMMARY JUDGMENT FOR FARIBA COHEN THAT HER FBAR VIOLATION WAS NONWILLFUL.

Pursuant to Fed. R. Civ. Proc. 56(f)(1), the Court may grant summary judgment for the nonmovant (after giving notice and a reasonable time to respond). Plaintiff's case for willfulness is based on inaccurate facts and inadmissible evidence. In this case, the facts demonstrate that Fariba Cohen did not willfully violate the FBAR reporting requirement. This conclusion is based on the following facts:

- Fariba Cohen did not have knowledge of the FBAR filing requirement on June 30, 2009 (the due date for the 2008 FBAR).

- Fariba Cohen did not sign her 2005, 2006, 2007, and 2008 tax returns.
- Fariba Cohen did not have an opportunity to review any of her tax returns.
- Until her divorce case started in 2010, Fariba Cohen did not know that Fred Mashian created foreign entities to hold foreign bank accounts.
- Until her divorce case started in 2010, Fariba Cohen did not know that the Bank Leumi account was a foreign bank account.
- Until her divorce case started in 2010, Fariba Cohen thought the Bank Leumi account was a domestic account based in Beverly Hills, just like Saeed Cohen's other domestic accounts at Bank Leumi.
- Saeed Cohen often signed Fariba Cohen's signature, including on official documents.
- Fariba Cohen did not have access to Saeed Cohen's foreign bank accounts or foreign bank account records.
- Saeed Cohen lied to Fariba Cohen about foreign bank accounts and the balances in those accounts.
- Saeed Cohen lied to his return preparer, Hamid Fani, about having foreign bank accounts.
- Saeed Cohen controlled Fariba Cohen's access to Hamid Fani.
- Fariba Cohen was physically, mentally, and emotionally abused by Saeed Cohen.
- Fariba Cohen's was diagnosed with PTSD based primarily on the abuse that she suffered from Saeed Cohen.

Therefore, this Court should determine that Fariba Cohen did not willfully violate the FBAR filing requirement.  As such, this Court should grant summary judgment for Fariba Cohen and find that she is liable for an FBAR penalty pursuant to 31 U.S.C. § 5321(a)(5)(B)(i) in the amount of $10,000.

VI.    **CONCLUSION**

For the reasons stated herein, the Court should deny the Motion because there is at least a genuine issue of material fact as to whether Fariba Cohen willfully violated the FBAR filing requirement.  In addition, pursuant to Fed. R. Civ. Proc. 56(f)(1), the Court should grant summary judgment for Fariba Cohen and find that she is liable for one $10,000 penalty pursuant to 31 U.S.C. § 5321(a)(5)(B)(i).

                                    HOLTZ, SLAVETT & DRABKIN, APLC

DATED: November 25, 2019_        By:  /s/ Gary M. Slavett_____
                                       Gary M. Slavett


DATED: November 25, 2019_        By:  /s/ David J. Warner_____
                                       David J. Warner

                                       Attorneys for Defendant
                                       Fariba Ely Cohen